**James J. CLARK, Appellant,**

v.

**UNITED STATES of America,**
**Appellee.**

**No. 14243.**

United States Court of Appeals
District of Columbia Circuit.

Argued March 5, 1958.

Judgment Entered July 21, 1958.

Opinion Filed Aug. 7, 1958.

Petition for Rehearing En Banc Denied
Sept. 12, 1958.

Mr. Wesley S. Williams, Washington, D. C. (appointed by the District Court) for appellant.

Mr. John D. Lane, Asst. U. S. Atty., with whom Messrs. Oliver Gasch, U. S. Atty., and Lewis Carroll and Joel D. Blackwell, Asst. U. S. Attys., were on the brief, for appellee.

Before EDGERTON, Chief Judge, and BAZELON and BURGER, Circuit Judges.

EDGERTON, Chief Judge.

This appeal is from a conviction of murder in the first degree.

Appellant pleaded not guilty and testified he "must have been insane." As we said in Tatum v. United States, 88 U.S. App.D.C. 386, 390, 190 F.2d 612, 616, "the function of the trial court in regard to the issue of sanity is to determine whether that issue is brought into the case by evidence." Here, the trial court determined that the issue was brought into the case by evidence. The court instructed the jury that "the defendant has raised the issue of insanity" and that "the first thing you will do is to consider whether or not at the time the crime was committed the defendant was of sound or unsound mind. * * * If you find that he was of unsound mind or have a reasonable doubt about it, of course, you must return a verdict of not guilty by reason of insanity."

But appellant's trial counsel, who was not his present counsel, had already said to the jury: "I think this is a case of manslaughter, not a case of first degree murder * * *. We are not asking you to acquit this man, to free him. We know that he must pay a penalty * *. So that again, I say, we have not asked you, we do not ask you for an acquittal."

Defense counsel's attempt to take the defense of insanity out of the case was error. We cannot say it was not prejudicial. It must have tended, and may have tended effectively, to persuade the jury to disregard the court's subsequent instruction that they should find the defendant not guilty by reason of insanity unless they found, beyond a reasonable doubt, that he was sane.[1]

Reversed and remanded for a new trial.

BURGER, Circuit Judge (dissenting).

Appellant and some others, including the deceased, were visiting one night at a gasoline station. Appellant and the deceased, who had both been drinking, but were not drunk, got into a heated argument which stopped just short of blows. Appellant left the station, went to his home a block away, got a shotgun out of a closet, loaded it, returned to the station, and shot the deceased in the back, through the window at a range of three feet, as deceased sat watching television. Before he left the filling station to get the shotgun appellant, by his own pretrial admissions, said to Jack Douglas, his intended victim, "You had better not be here when I come back."

Appellant testified he had been drinking pretty heavily; that he killed de-

---

[1] Our dissenting brother says that a concession of guilt is a permissible trial tactic, citing the Loeb-Leopold case as an outstanding example. See also Tatum v. United States, 1951, 88 U.S.App.D.C. 386, 391-392, 190 F.2d 612, 617-618. In the Loeb-Leopold case, however, the defendants, after long consultation with their families, friends and advisors, entered knowing and deliberate pleas of guilty. Here the appellant not only pleaded not guilty, but reaffirmed his plea in his testimony.

ceased under the influence of alcohol, and that "I did this crime unbeknowing to what I was doing in a crazy and insanity manner," and "I must have been insane," and "I believe I was insane, out of my head." The explanation for his conclusion that he was insane was the fact that he shot deceased in the back; at some points it might be argued that he meant "crazy drunk."[1] In response to a question by the prosecutor, he stated his defense was both intoxication and insanity. on the day of his arrest he told one of the policemen that he had an aunt who was insane; that he was not crazy but would like to be; that he would rather be in St. Elizabeths than jail; that he knew the difference between right and wrong; that he didn't think what he did was right, but the deceased had kept picking on him and threatening him. Thus, there was in reality no *evidence* of insanity, but only appellant's naked, self-serving speculations that he must have been crazy; and indeed, he had himself contradicted even these statements.

The Government introduced evidence that appellant had been coherent at his arrest, and had appeared normal during interrogation, and had been able to recall what had occurred; beyond this the Government introduced no evidence on insanity.

Appellant's trial attorney (privately retained, not appointed) did not urge the defense of insanity in his closing argument. Instead, he said he was not asking for an acquittal; he conceded that appellant should pay some penalty, but he asked the jury to return a verdict of manslaughter, and not of first degree murder.

1. He testified that he remembered everything up to the time he left the station after the argument, but nothing thereafter until the next morning. However, in his statement to the police the day after the killing he remembered events clearly enough to make a detailed statement. His memory became impaired between arrest and trial.

2. Closing his argument to the jury, defense counsel said: "I am certain from

The trial court then instructed on insanity. There is no claim that his charge was erroneous. The jury returned a verdict of guilty of first degree murder and appellant was sentenced to death, as the statute requires.

On appeal, appellant had a new attorney who argued three points: *First:* that appellant's testimony was sufficient evidence to inject the defense of insanity into the case, so as to require an insanity instruction and put upon the Government the burden of proving defendant's sanity beyond a reasonable doubt. *Second:* that the Government failed in that burden because it introduced no *expert* testimony that appellant was sane. *Third:* that trial counsel was ineffective primarily because he conceded that appellant was guilty of some degree of homicide.

The majority holds that counsel committed fatal error in failing to argue the issue of insanity to the jury and for conceding that a lesser degree of homicide occurred. Implicit in the holding is the finding that this conduct constituted ineffective assistance of counsel. I dissent on the grounds that it is wholly unwarranted for counsel to be *required* by an appellate court to argue to a jury an issue or point which, as a matter of deliberate and calculated tactics, he considers it in his client's interest to abandon.[2] Celebrated criminal defense advocates, as well as more modestly endowed lawyers, have done this for centuries. Indeed a defense lawyer who would try to make out an insanity defense on the "evidence" of insanity in this record might well be charged with incompetence for taking the risk of alienating the jury's sympathies.

the testimony you have heard * * * that you will not possibly conclude that this is a cold, premeditated crime. I feel certain that after His Honor explains the definition of manslaughter, that you will come in with a verdict of manslaughter. Of course, you may elect to come in with a verdict of second degree. But certainly, I sincerely trust that you will not reach the verdict as requested by the Government, that this was a cold, premeditated crime."

Appellant's own counsel appointed to conduct this appeal acknowledged in open court that, had the tactic worked in this particular case, it would have been a sound and good trial tactic. I do not suggest that a basis for reversal could not be grounded on ineffective assistance of counsel for failing to press an essential or central element of defense.[3] But here, as I pointed out, there was *not the slightest evidence of insanity* apart from appellant's testimony that he "must have been insane," and the "ineffectiveness" of counsel rests entirely on failure to argue insanity and on the calculated decision to concede guilt of a lesser degree. On this record trial counsel had a right to believe that it would be in appellant's best interest to use the tactic of admitting appellant's obvious guilt and seeking a lesser punishment. Clarence Darrow did this in the Loeb-Leopold case in the form of a guilty plea on which he then successfully urged the *court* to impose the lesser punishment of life imprisonment.

In the present case the record discloses that the appellant offered to enter a plea of guilty to second degree murder; the United States Attorney declined to recommend acceptance of such a plea, presumably in view of the undisputed evidence showing commission of a shockingly brutal murder.[4] After his client's proffered plea of guilty to second degree murder had been rejected, defense counsel based his trial strategy on an attempt to convince the jury to return this or a lesser verdict. On this record I do not feel the appellate court is warranted in saying that counsel's plan was so unwise as to deprive appellant of his right to effective assistance of counsel. The appropriateness of this strategy cannot be judged after the event solely by its fruits.

---

3. The majority seemingly wishes to avoid calling counsel's "error" ineffective assistance, but error of counsel is not grounds for reversal unless it defeats a fair trial.

---

4. The United States Attorney advised the Court of the Government's position "that inasmuch as there had not been any struggle in the case, the man went away and got the gun, we wouldn't accept the plea."