Robert GRAY, Appellant,

v.

UNITED STATES of America, Appellee.

No. 16972.

United States Court of Appeals District of Columbia Circuit.

Argued Sept. 11, 1962.

Decided May 2, 1963.

Petition for Rehearing En Banc Denied En Banc June 11, 1963.

Mr. Charles R. Cutler, Washington, D. C. (appointed by this court), with whom Mr. Joseph DuCoeur, Washington, D. C., was on the brief, for appellant.

Mr. Barry Sidman, Asst. U. S. Atty., with whom Messrs. David C. Acheson, U. S. Atty., Joel D. Blackwell, Asst. U. S. Atty., and Nathan J. Paulson, Asst. U. S. Atty. at the time of argument, were on the brief, for appellee.

Before BAZELON, Chief Judge, and BURGER and WRIGHT, Circuit Judges.

PER CURIAM.

This is an appeal from a conviction of murder in the second degree. The primary issue presented relates to the denial, *without prejudice,* of appellant's *pro se* motion asking for a mental examination. At the time the motion was filed, appellant was represented by counsel of record. Counsel, as well as appellant, was notified of the court's action. The motion was not re-urged and on trial appellant's counsel specifically eschewed raising the mental issue. Appellant, with new counsel on appeal, argues that the *pro se* motion should have been granted.

4. H.R.Rep. No. 1542, 74th Cong., 1st Sess. 3–8; S.Rep. No. 1215, 74th Cong., 1st Sess. 1–3.

It was reasonable for the trial court to assume, in denying the motion without prejudice, that if the appellant, after consultation with his lawyer, wanted to press the motion, it would be refiled. The motion for mental examination was not refiled and the mental issue was not raised. Consequently, nothing is presented for review. Compare Johnson v. United States, 110 U.S.App.D.C. 187, 189, 290 F.2d 378, 380 (1961).

The other claims of error urged by appellant have been considered by the court. They are without support in this record.

Affirmed.

BAZELON, Chief Judge (concurring).

I agree entirely with the court's opinion. I address myself only to our brother Burger's individual interpretation of the principles unanimously adopted by this court en banc in McDonald v. United States, 114 U.S.App.D.C. 120, 312 F.2d 847 (1962). These principles were involved in a subsequent case—Hawkins v. United States, 114 U.S.App.D.C. 44, 310 F.2d 849 (1962), where a unanimous panel of this court applied them. But as the court's opinion in the present case shows, McDonald is not here involved. Hence any discussion of that case, including reference to its effect on the earlier cases of Tatum v. United States, 88 U.S.App.D.C. 386, 190 F.2d 612 (1951); Clark v. United States, 104 U.S.App.D.C. 27, 259 F.2d 184 (1958); and David v. United States, 160 U.S. 469, 16 S.Ct. 353, 40 L.Ed. 499 (1895), is abstract and hypothetical. Accordingly, I refrain from any such discussion.

I am constrained to point out, however, that much of our brother Burger's present commentary upon McDonald appears to be based upon the language and reasoning of his concurring opinion in Blocker v. United States, 110 U.S.App. D.C. 41, 45, 288 F.2d 853, 857 (1961), which a majority of this court both there and in later cases have consistently refused to follow. In Campbell v. United States, 113 U.S.App.D.C. 260, 307 F. 2d 597 (1962), we reversed the convic-

tion for an erroneous instruction which followed the concurring opinion in Blocker. In McDonald, decided after Campbell, the trial court's instruction was consistent with the concurring opinion in Blocker. We held that the instruction was "not an accurate statement of the test for criminal responsibility in this Circuit." 312 F.2d at 851. In the recent cases of Dail v. United States (No. 17016), and Anderson v. United States (Misc. 1664), both subsequent to McDonald, the Government conceded that the trial courts' instructions were "similar to the charge which [this] court found improper in Campbell v. United States * * *," and this court ordered the judgments of conviction vacated, citing Campbell v. United States.

BURGER, Circuit Judge (concurring).

I agree fully with the court's opinion, but affirmance of appellant's conviction becomes more meaningful when viewed against the record and the contentions made on appeal.

Appellant and others were spending an evening together at the apartment of a friend, Banks. About midnight a petty argument developed between appellant and one Andrew Speaks, who kicked appellant. Appellant ran out of the apartment shouting: "Don't nobody treat me like that. I'll kill him." Appellant then took a bus to his girl friend's home where he lived part of the time, secured his own loaded pistol and returned to the Banks' apartment approximately two hours after the quarrel. As he approached he saw Speaks with two women and a man. Appellant fired at Speaks and at least two shots struck Speaks, killing him. Appellant fled, throwing the pistol, with three unexpended cartridges, into some bushes. Cf. Clark v. United States, 104 U.S.App.D.C. 27, 259 F.2d 184 (1958). Appellant returned to his part time residence at approximately 3:30 a. m. and found the police there. He surrendered immediately, admitted the shooting and volunteered to take the police to find the pistol, which was done. On these facts appellant's contentions concerning the

admissibility of his confession under Mallory v. United States, 354 U.S. 449, 77 S.Ct. 1356, 1 L.Ed.2d 1479 (1957), are without merit.

In his testimony, appellant claimed he could not remember all that happened during the interval between the quarrel at midnight and the shooting at 1:55 a. m. saying: "I was out of my head. I don't know whether I caught the bus or not until I found myself on the bus." He recalled obtaining the gun but claimed he was merely taking it from his girl friend's apartment to his own home. He also recalled the shooting but claimed that Speaks rushed at him as though to attack.

In the course of the trial, the question of appellant's mental condition was discussed and his counsel disclaimed that this was an issue in the case. On appeal, new counsel appointed by this court contend, among other claims, that the trial court was bound to determine whether the trial counsel acted with appellant's consent in failing to press the issue of his mental condition under Clark v. United States, supra. Counsel for appellant also contend that the District Court was bound to go beyond trial counsel's statement in open court, in light of what the evidence disclosed about appellant's mental condition. The evidence relied on by appellant was his own testimony that he was "out of his head" and that he could not recall getting on the bus.

In these circumstances it seems clear in light of our holding in McDonald v. United States, 114 U.S.App.D.C. 120, 312 F.2d 847 (1962), that the evidence of mental abnormality was so insubstantial and illusory that it raised no issue. Cf. Tatum v. United States, 88 U.S.App. D.C. 386, 190 F.2d 612 (1951). Secondly on this record the trial judge was not required to determine whether the position taken by trial counsel on that issue had the approval of the appellant. It is

a rare and unusual situation when the trial judge should "bypass" trial counsel and inquire of the defendant whether he consents to and approves his counsel's conduct of the trial. This case does not present one of these exceptions.

It may be useful to recapitulate the effect, as I see it, of our recent holding in McDonald v. United States, supra, as it bears on our standards of criminal responsibility:

1. We have modified our standards as to what constitutes "some evidence" under Davis v. United States, 160 U.S. 469, 16 S.Ct. 353, 40 L. Ed. 499 (1895). Compare McDonald v. United States, supra, 312 F.2d at 849–50, with Tatum v. United States, supra.

2. We have made it clear that evidence of an intelligence test rating below normal does not, standing alone, constitute some evidence of mental defect [1] so as to shift the burden of proof and invoke the instruction on criminal responsibility. Compare McDonald v. United States, supra, 312 F.2d at 849–50, with Stewart v. United States, 107 U.S. App.D.C. 159, 275 F.2d 617 (1960), rev'd on other grounds, 366 U.S. 1, 81 S.Ct. 941, 6 L.Ed.2d 84 (1961).

3. We have clarified the role of the jury in relation to criminal responsibility and we have expanded that role (a) by our holding that a jury is not bound by the experts' conclusions as to what is or is not a mental disease or defect and (b) by holding that for determining criminal responsibility, mental abnormality is a "mental disease or defect" *only* if it substantially affects mental or emotional processes and substantially impairs the behavior controls of the defendant. Compare McDonald v. United States, supra, 312 F.2d at 850–51.

[1]. There was expert testimony that an I.Q. rating *below normal, i. e.,* below the range of 90–110, constituted a mental defect. This is but another illustration of the great difference between use of the terms "disease" and "defect" in a clinical context and their use in deciding criminal responsibility in a trial.

4. By enlarging the scope of the jury function we have narrowed the area in which a verdict of not guilty by reason of insanity may appropriately be granted by direction of this court. Compare McDonald v. United States, supra, 312 F.2d at 850–851, with Douglas v. United States, 99 U.S.App.D.C. 232, 239 F.2d 52 (1956).[2]

As our McDonald opinion pointed out, these changes flow from our experience under the disease-product test and various opinions construing it. To the extent that Tatum v. United States, 88 U.S.App.D.C. 386, 190 F.2d 612 (1951); Clark v. United States, 104 U.S.App.D.C. 27, 259 F.2d 184 (1958); Goforth v. United States, 106 U.S.App.D.C. 111, 269 F.2d 778 (1959), are inconsistent with McDonald v. United States, supra, they must be regarded as modified. Moreover, the majority holding in Campbell v. United States, 113 U.S.App.D.C. 260, 307 F.2d 597 (1962), must be read in light of the new instructions we have prescribed (a) as to what constitutes a mental disease or defect for the jury's purposes in passing on criminal responsibility; and (b) as to the jury's power to pass on the credibility of the witnesses, including expert witnesses.

In the McDonald holding we have by no means narrowed the scope of expert testimony; if anything we have significantly broadened its scope by introducing the element of a defendant's capacity to control his behavior as a factor in deciding criminal responsibility, an element long advocated by a minority of the court.

If we adhere faithfully to the spirit of the McDonald holding, the defendant's capacity to control his behavior and "capacity to exercise will and choice," long absent from our standard, will now be one of the important considerations in our test for criminal responsibility. Cf. Blocker v. United States, 110 U.S.App.D.C. 41, 288 F.2d 853 (1961) (concurring opinion, 110 U.S.App.D.C. at 56–57, 288 F.2d at 868–869); see also Campbell v. United States, supra, dissenting opinion and proposed form of instruction, 113 U.S.App.D.C. at 278–279, 307 F.2d at 616–617; United States v. Currens, 290 F.2d 751 (3d Cir. 1961); Model Penal Code § 4.01 (Tent. Draft No. 4 1955). We have emphasized in McDonald that the "jury must determine for itself, from all the testimony, lay and expert, whether the nature and degree of the [mental] disability are sufficient to establish a mental disease or defect as * * * now defined * * *." As a result, psychiatric classification of any particular condition as being a "mental disease" will no longer have the significance or give rise to the problems this characterization brought on in the past. The experts may freely use any terms they desire as a form of "shorthand language to facilitate communication within [their] profession," to classify and describe ailments which need treatment but their terms will no longer dominate the operation of our rules of law. We have also underscored—and implemented—the proposition that the determination of criminal responsibility is the function of jurors and judges, aided, but not controlled by the experts.

It is quite true, as Judge Bazelon points out, that the views here expressed are based upon what has been written from time to time in sharp disagreement with Durham v. United States, 94 U.S.App.D.C. 228, 214 F.2d 862, 45 A.L.R.2d 1430, as applied prior to McDonald. This court indeed "consistently refused to follow" the minority views as Judge Bazelon points out—until McDonald v. United States. But the most cursory reading of the McDonald opinion reveals that its departures from our prior holdings are drawn directly from the dissenting views of a minority of the court expressed on

---

2. We have never had occasion to pass directly on the constitutional issues which lurk in the directing of a verdict of not guilty by reason of insanity *by the trial* *judge*, thus denying the defendant an opportunity to have the jury return a verdict of not guilty.

various occasions over a number of years. Moreover, the minority views rejected in Campbell have now been adopted in substantial part by the entire court, demonstrating what is axiomatic as to the utility and value of dissent.

It should be noted that Judge Bazelon does not assert that the views which are here expressed as to the meaning and impact of our McDonald holding are erroneous. Of necessity my interpretation must stand or fall on a comparison with McDonald. If indeed Judge Bazelon disagrees with the interpretation of the McDonald holding as outlined earlier in this concurring opinion, it may well be that he disagrees pro tanto with McDonald itself.