Robert Keith CARTER, Appellant,

v.

UNITED STATES of America,
Appellee.

Buell HENLEY, Appellant,

v.

UNITED STATES of America,
Appellee.

Nos. 17254, 17259.

United States Court of Appeals
Eighth Circuit.

May 20, 1964.

Rehearing Denied June 15, 1964.

Thomas J. Allen, Kansas City, Mo., and Marion J. Huffman, Hartville, Mo., filed appellants' brief.

F. Russell Millin, U. S. Atty., Kansas City, Mo., and Calvin K. Hamilton, Asst. U. S. Atty., Kansas City, Mo., filed brief for appellees.

Before JOHNSEN, Chief Judge, and MATTHES and RIDGE, Circuit Judges.

JOHNSEN, Chief Judge.

Carter and Henley, the appellants here, were convicted on charges of purchasing and possessing, in violation of 26 U.S.C. § 4704(a), narcotic drugs not in or from the original stamped package; of selling and transferring, in violation of 26 U.S.C. § 4705(a), narcotic drugs not in pursuance of a written order on a form issued by the Secretary of the Treasury; and

of conspiring, in violation of 18 U.S.C. § 371, to commit the foregoing offenses. A five-year sentence was imposed on each conviction, with the three sentences of each appellant being made to run concurrently.

Reversal is sought on two contentions: (1) That on his medical history a Government witness named Hines was incompetent to give testimony as a matter of law, and the admission of his testimony was as to all of the charges involved prejudicial, and was a violation of due process; and (2) that even with Hines' testimony received and credited, the evidence still was insufficient to support the conviction of conspiracy. We have stated the contentions in inverse order to that of the briefs for purposes of our discussion.

On the facts shown by the record, the contention that the Court was legally required to hold Hines incompetent to give testimony is without any merit. Indeed, for the Court to have so held would have been for it to make departure from the rule and principles which have been regarded as firmly settled in the federal judicial system ever since District of Columbia v. Armes, 107 U.S. 519, 2 S.Ct. 840, 27 L.Ed. 618 (1882). The opinion in that case is so definitive and comprehensive that no problem has existed in relation to it, as an examination of Shepard's Citations will demonstrate, and there has not been need since for the Supreme Court to speak upon the question.

In Mr. Justice Field's language of that day, 107 U.S. at 521–522, 2 S.Ct. at 842, 27 L.Ed. 618 "The general rule * * * is that a lunatic or a person affected with insanity is admissible as a witness if he have sufficient understanding to apprehend the obligation of an oath, and to be capable of giving a correct account of the matters which he has seen or heard in reference to the questions at issue; and whether he have that understanding is a question to be determined by the court * * * *".

The opinion makes quotation from Chief Justice (Lord) Campbell's simple declaration in Reg. v. Hill, 5 Cox, Crim. Cas. 259, that "The proper test must always be, does the lunatic understand what he is saying; and does he understand the obligation of an oath? * * * (I)f he can stand the test proposed, the jury must determine all the rest". 107 U.S. at 523, 2 S.Ct. at 844, 27 L.Ed. 618.

The Model Code of Evidence of the American Law Institute (approved and adopted in 1942) makes expression of the rule in more modern terms (Rule 101, p. 91): "Every person is qualified to be a witness as to any material matter unless the judge finds that (a) the proposed witness is incapable of expressing himself concerning the matter so far as to be understood by the judge and jury * *, or (b) the proposed witness is incapable of understanding the duty of a witness to tell the truth".

The effect of appellant's contention here is that the abstruse psychiatric concepts of mental ailment or illness which some courts recently have been accepting as providing the standard for whether an accused is lacking in criminal capacity and responsibility should be made applicable to the witnesses in a criminal case so as to require that their capacity to testify against the accused be resolved on this same basis.

We have not in this Circuit accepted this loose and unobjective standard as a basis for measuring criminal capacity and responsibility on the part of an accused.[1] But even where this has

---

1. As our opinions in Dusky v. United States, 8 Cir., 271 F.2d 385; 295 F.2d 743, and Feguer v. United States, 8 Cir., 302 F.2d 214, indicate, we have not seen fit to discard the responsibility test of the M'Naughten rule, with its irresistible impulse addition, in favor of the Durham rule, 94 U.S.App.D.C. 228, 214 F.2d 862, 45 A.L.R.2d 1430, or the Currens rule, 3 Cir., 290 F.2d 751. So long as a jury is to be permitted to determine the question of insanity in relation to criminal responsibility, it necessarily must be given some definitive test that is within its general capacity to understand and apply.

been done, it could not afford a basis for the projection of these theoretical concepts on criminal responsibility into the unrelated and practical field of what judicial experience has found to be the most useful and satisfactory test of witness competency for trial purposes—the capacity to communicate relevant material and to understand that there is an obligation to do so truthfully. Such a projection as is here sought would be to push back the law of witness competency in this respect to where it was a little over a century ago. See II Wigmore on Evidence (3d Ed. 1940) § 492 et seq.

It should be sufficient merely to suggest a considered reading of the Armes opinion, but the following cogent excerpt may be set out demonstratively: "But lunacy or insanity assumes so many forms, and is so often partial in its extent, being frequently confined to particular subjects, while there is full intelligence on others, that the power of the court [to hold a witness disqualified to testify] is to be exercised with the greatest caution. The books are full of cases where persons showing mental derangement on some subjects evince a high degree of intelligence and wisdom on others. The existence of partial insanity does not unfit individuals so affected for the transaction of business on all subjects, nor from giving a perfectly accurate and lucid statement of what they have seen or heard". 107 U.S. at 521, 2 S.Ct. at 842, 27 L.Ed. 618.

■ As to the competency of Hines to be permitted to testify in the situation here involved, we are unable to see any possible question. His testimony was as to conversations which he had with appellant Henley in the Jackson County jail, at Kansas City, Missouri. These occurred within a day or two after Hines had been returned to the custody of the District Court at Kansas City from the Medical Center for Federal Prisoners, Springfield, Missouri, where he had been sent for an examination during a 90-day period as to his mental condition, under 18 U.S.C. § 4244, in relation to a motion for vacation of the probation which had

previously been granted him on his conviction of violation of the Dyer Act, 18 U.S.C. § 2312.

The reports of the warden and psychiatric staff of the Medical Center noted that Hines had a history indicative of some mental illness over a period of several years, but declared that he was presently competent to understand the proceedings against him and to consult with his attorney. Revocation was made of Hines' probation and the Court sentenced him to a term of 18-months imprisonment, with a recommendation that he be permitted to serve the sentence at the Springfield Medical Center. He made service of the sentence there; was released as a prisoner in regular course; had been out for about a year at the time of the trial here involved; and was then, and had been for a period of six months preceding, regularly employed as "fleet manager" for a chain of filling stations in California. His testimony appeared to be clear, direct, and without any aspect of confusion. Indeed, so far as a reading of the record is concerned, he gave no indication of any mental impairment whatever.

The Court, in entrusting to the jury the evaluation of his credibility and the weight of his testimony, placed before it the history of his Springfield confinement and the expressions of the medical staff in relation thereto, and gave the jury full cautionary instructions. If appellants will review the far stronger fact-situation involved in the Armes case, they should have no difficulty in recognizing the utter lack of basis for any challenge to the Court's right to permit Hines to testify here.

■ Appellants' second contention as to the insufficiency of the evidence to support the conviction of conspiracy is also without merit. In view of their two other concurrent terms, their attack upon the conspiracy conviction would be entitled to be completely ignored, since it could gain them nothing in right to release. Kiyoshi Hirabayashi v. United States, 320 U.S. 81, 85, 63 S.Ct. 1375, 1378, 87 L.Ed. 1774; Dranow v. United

States, 8 Cir., 307 F.2d 545; United States v. Miller, 2 Cir., 246 F.2d 486. In order to foreclose the matter against the possibility of collateral attack for any subsequent purpose, such as habitual criminal punishment, we have chosen to deal with it adjudicatorily.

Hines testified to statements or admissions made to him by appellant Henley in the Kansas City jail, as to how the narcotics involved had been obtained by Henley, as to the entrustment of their possession to appellant Carter, and as to the understanding between himself and Carter in relation to them. This was done in an effort to induce Hines, who knew nothing previously about the matter, to assist in effecting disposition of the narcotics, on Henley's supposition that Hines was going to be released on bail. Hines communicated the information to the federal authorities.

A narcotics agent named Dino thereupon approached Carter, stated that Henley had requested him to pick up the narcotics, and offered to pay Carter the amount which Henley had told Hines that Carter was to receive out of the deal. Carter accepted the money, turned over the narcotics, and in his conversations with Dino corroborated what Henley had said as to how the narcotics had been acquired and as to the understanding which existed between them. Other actions in which Carter engaged during Dino's contact with him also confirmed the existence and nature of the understanding and relationship between the appellants. There were other circumstances in the evidence which further lent support to the things which Henley and Carter had told Hines and Dino and to the fact of the conspiracy.

■ ■ It is not necessary to set out the details of the evidence. It clearly afforded a competent and adequate basis for the jury to find that there had been an understanding and relationship between Henley and Carter, which amounted to a conspiracy under the narcotic laws, and as to which overt acts had been done in furtherance or execution of the unlawful scheme. And, of course, the fact that the indictment alleged that there were others involved in the conspiracy, which the Government failed to prove, would not prevent the conviction of Henley and Carter for their proved participation therein. Ferina v. United States, 8 Cir., 302 F.2d 95, 103.

Affirmed.