**UNITED STATES of America**

v.

**Frederick Freeman LEISTER, Jr., also known as "Paul Stevens."**

**Cr. No. 26466.**

United States District Court
D. Maryland.

Dec. 4, 1964.

Thomas J. Kenney, U. S. Atty., and Robert J. Carson, Asst. U. S. Atty., Baltimore, Md., for plaintiff.

Jean F. Dwyer, Washington, D. C., for defendant.

THOMSEN, Chief Judge.

Defendants Leister and Bannan were indicted for bank robbery under three counts charging violations of subsections (a), (b) and (d) respectively of 18 U.S.C.A. § 2113. Bannan entered a plea of guilty before another judge, and is now serving a 15-year sentence. Leister requested a trial by the Court without a jury, and the Government and the Court consented. His able counsel required the Government to prove all elements of the offenses charged, but is relying principally on her contention that as a result of mental disease Leister was unable to conform his conduct to the requirements of law.

1. The Court has considered carefully the credibility of the witnesses, particularly that of the accomplice Bannan. The evidence shows that on the morning of November 12, 1963, at District Heights, Maryland, Leister and Bannan, each armed with a revolver, a dangerous weapon, which Leister threatened to use if his orders were not obeyed, robbed the District Heights Branch of the Citizens Bank of Maryland, the deposits of which were insured by the FDIC, of $4,783, and assaulted and put in jeopardy the lives of the manager and of the two tellers named in the indict-

ment. Bannan admitted his participation in the robbery and implicated Leister, who was then using the alias "Paul Stevens". Bannan's testimony as to how he and Leister planned and executed the robbery was not seriously shaken on cross · examination nor otherwise impeached. It is supported by the evidence of Leister's fingerprint at the place where the testimony shows that one of the bandits, wearing a mask, vaulted over the counter, by the description of the masked bandit given shortly after the robbery and on the witness stand by Mrs. Clements, a teller, and by Rye, a customer, both of whom had a good opportunity to see him, and further by the testimony of Mrs. Clements that the masked bandit held his head to one side in the same way Leister holds his. The manager identified Bannan, who had stood guard over him. The testimony of the other customer, Mrs. Sloan, who was acquainted with Leister, is inconclusive. She was so excited that she was unable to decide whether or not the masked bandit was Leister. The Court finds that the opinion of the fingerprint expert was fully supported by the evidence. The Court is satisfied beyond a reasonable doubt that Leister participated in the robbery, as alleged in the three counts.

2. Leister had a most unfortunate childhood. His father was a degenerate alcoholic, his mother was promiscuous at home and abroad, and his grandmother, who was faced with the responsibility of rearing him, despised him because he reminded her of his father; all of them punished him severely but inconsistently for various acts and omissions; he felt rejected by his family and became a juvenile delinquent. After a period in an institution, he entered the military service, and evidence offered as part of his case shows that some time thereafter he received a 14-year sentence for a series of Dyer Act offenses. Paroled early, he violated his parole about 1959, went to Canada, married a nurse, by whom he has two children, and traveled across Canada working as a linotype operator, repeatedly moving to new jobs in new cities primarily because he repeatedly gave false references. He finally returned to the United States, working for a while in Norfolk, then in Washington.

Although the testimony of his wife and sister may be taken with a grain of salt, it appears that Leister is impulsive, antisocial, prone to react in an emotionally unstable manner to minor slights and stresses, inclined to gamble and make impulsive gifts, and unable to plan successfully his business and family life. His feeling of rejection by society has made him antisocial and frequently rebellious against authority.

The three psychiatrists who testified are agreed that he has a high degree of emotional instability. Two diagnosed his mental disease as emotionally unstable personality, one as psychoneurotic reaction (i. e. psychoneurosis) ; all agree that he is not psychotic.

After carefully considering all the medical evidence, as well as the lay testimony, the Court finds that Leister is suffering from a mental disease which affects his ability to establish and maintain adequate personal relationships with his family and others. From time to time this disease affects his ability to control his actions, particularly impulsive, excessive, sometimes bizarre reactions to real or fancied slights, to which he is likely to respond in an emotionally unstable manner. The robbery in question, however, was not an impulsive affair, but was planned over a period of two weeks or more.

■ The evidence offered by the defendant was sufficient to cast upon the Government the burden to prove criminal responsibility as an element of the offense, beyond a reasonable doubt.

In United States v. Hopkins, D.Md., 169 F.Supp. 187, 188–191 (1958), this Court reviewed the Federal cases dealing with the tests to be applied to determine such responsibility. That discussion need not be repeated here. Since 1958 a number of Circuits have considered the question, but there has been no authoritative

decision by the Supreme Court or the Fourth Circuit. The Fifth and Eighth Circuits have adhered to their previous decisions that the federal courts other than the Courts of the District of Columbia are required to apply the M'Naghten rules, supplemented by an irresistible impulse test. Argent v. United States, 5 Cir., 325 F.2d 162 (1963); Carter v. United States, 8 Cir., 332 F.2d 728 (1964). The Ninth Circuit has not departed from that position, as stated in Sauer v. United States, 241 F.2d 640, 649 (1957). They have been joined by the Sixth Circuit. Pollard v. United States, 6 Cir., 282 F.2d 450 (1960).

In a full opinion Chief Judge Biggs, in United States v. Currens, 3 Cir., 290 F. 2d 751 (1961), reviewed the earlier cases, rejected both the M'Naghten and the Durham rules, and defined criminal responsibility for his Circuit in terms similar to those contained in sec. 4.01 of the A.L.I. Model Penal Code, Final Draft, 1962. That section reads as follows: "Mental Disease or Defect Excluding Responsibility. (1) A person is not responsible for criminal conduct if at the time of such conduct as a result of mental disease or defect he lacks substantial capacity either to appreciate the criminality [wrongfulness] of his conduct or to conform his conduct to the requirements of law."

In Wion v. United States, 10 Cir., 325 F.2d 420, the Tenth Circuit en banc, in a careful opinion by Chief Judge Murrah, adopted the A.L.I. test.[1]

■ No circuit has adopted the District of Columbia (Durham) rule, for reasons which are stated in the opinions cited above and in the Hopkins case, and which are illuminated by the difficulties the District of Columbia Courts have had in understanding and applying the Durham language. See e. g. McDonald v. United States, 114 U.S.App.D.C. 120, 312 F.2d 847 (1962), and Gray v. United States, 115 U.S.App.D.C. 324, 319 F.2d 725 (1963). The Circuits have generally agreed with the view and policy of this Court in Hopkins that the doctors should not be unduly restricted in their testimony, but should be allowed a wide range in giving the Court the benefit of their medical opinions.

This Court adheres to the view expressed in the Hopkins case, and followed by Judge Watkins since, that the A.L.I. test or some test essentially similar thereto is desirable. Since, however, a majority of the Circuits who have considered the matter recently are still appying M'Naghten plus irresistible impulse, this Court has made ultimate findings based upon both formulations.

■ The Court is satisfied beyond a reasonable doubt and finds that Leister knew the nature and quality of the act he was doing when he robbed the bank, and knew that what he was doing was wrong. The robbery was not the result of an irresistible impulse, as that term is used in the test adopted by some of the Circuits.

The Court also is satisfied beyond a reasonable doubt and finds that at the time of the robbery and immediately prior thereto, Leister did *not,* as a result of mental disease or defect, lack substantial capacity either to appreciate the criminality of his conduct or to conform his conduct to the requirements of law.

The Court finds the defendant guilty as charged in all three counts.[2]

1. The opinion should also be read for its suggestion of the policy which should eventually be adopted in these cases. 325 F.2d 428 et seq.

2. The Court requested a 90-day study under the provisions of 18 U.S.C.A. § 4208(b), and Leister has been sent to the Springfield Hospital for such study.