William R. GASKINS, Appellant,

v.

UNITED STATES of America,
Appellee.

No. 20252.

United States Court of Appeals
District of Columbia Circuit.

Argued June 26, 1967.

Decided Dec. 20, 1967.

Mr. Wayne K. Hill, Washington, D. C., (appointed by this court) for appellant.

Mr. Thomas Lumbard, Asst. U. S. Atty., with whom Messrs. David G. Bress, U. S. Atty., and Frank Q. Nebeker and John Treanor, Asst. U. S. Attys., were on the brief, for appellee.

Before FAHY, Senior Circuit Judge, and TAMM and ROBINSON, Circuit Judges.

SPOTTSWOOD W. ROBINSON III, Circuit Judge.

Appellant, a drug addict with schizoid traits, was indicted in seven counts for offenses allegedly committed during the holdup of a store. At his trial, the sole defense was insanity. This issue was submitted to the jury, and it found him guilty on five counts.[1] He now contends that the trial judge erroneously refused to enter a judgment of acquittal, and misinstructed the jury on the relationship between his mentality, his addiction and the acts comprising the offenses. We affirm.

I

■ It is against a background of fundamentals judicially formulated that we must examine appellant's claim that the evidence required his acquittal. With us, "an accused is not criminally responsible if his unlawful act was the product of mental disease or mental defect,"[2] a standard thus combining a quality of mind and its linkage with the offending conduct. Exculpation entails an "abnormal condition of the mind which substantially affects mental or emotional processes and substantially impairs behavior controls,"[3] and which "made the effective or decisive difference between doing and not doing the act."[4] An insanity defense, legitimately invoked, though involving narcotism as an operative factor, stands or falls according to the Government's capability to dispel all reasonable doubt in that regard.[5]

1. Assault with a dangerous weapon (two counts), assault on a police officer, robbery and carrying a pistol without a license. D.C.Code §§ 22-502, 22-505, 22-2901, 22-3204 (1967 ed.). Concurrent sentences were imposed on all counts.

2. Durham v. United States, 94 U.S.App. D.C. 228, 241, 214 F.2d 862, 874-875, 45 A.L.R.2d 1430 (1954).

3. McDonald v. United States, 114 U.S.App. D.C. 120, 124, 312 F.2d 847, 851 (en banc 1962).

4. Carter v. United States, 102 U.S.App. D.C. 227, 236, 252 F.2d 608, 617 (1957).

5. See Green v. United States, 127 U.S. App.D.C. 272, 383 F.2d 199, 200-201 (1967); Greene v. United States, 122 U.S. App.D.C. 150, 151, 352 F.2d 366, 367

Our decisions also define boundaries within which the interplay of drug addiction is confined. The fact of addiction standing alone, does not permit a finding of mental disease or defect.[6] Evidence of that fact, however, has probative value in conjunction with evidence of mental illness,[7] and the effect of a deprivation of narcotics on behavioral controls is a relevant circumstance.[8] We have recognized, too, that extensive and protracted addiction may so deteriorate such controls as to produce irresponsibility within our insanity test.[9] But we have also made it plain that although a narcotic habit is causally connected with the crime, the defense is negated if the power of self-restraint is not diminished significantly.[10]

During the nearly five days of trial, three psychiatrists, two psychologists and four laymen gave testimony supplying antithetical answers to most of the critical inquiries. To indicate the decisional possibilities open to the jury, we need only summarize briefly the ultimate facts authorized, more frequently alternatively, by the proofs.[11] All experts agreed that appellant was chronically addicted to the use of heroin and that the criminal acts were in some wise connected with his addiction. They also concurred in the opinion that he had schizoid tendencies[12] but that, addiction aside, they did not amount to mental illness.[13] One psychiatrist felt that appellant had a schizoid personality which led to the addiction, and to mental disease as the combinational result. The other two psychiatrists were firm in their views that appellant was not mentally sick.[14]

(1965); Heard v. United States, 121 U.S. App.D.C. 37, 38, 39, 40, 348 F.2d 43, 44, 45, 46 (1964); Castle v. United States, 120 U.S.App.D.C. 398, 400 n. 1, 347 F.2d 492, 494 n. 1 (1964), cert. denied 381 U.S. 929, 85 S.Ct. 1568, 14 L.Ed.2d 687 (1965); Brown v. United States, 118 U.S.App. D.C. 76, 77, 331 F.2d 822, 823 (1964); Hightower v. United States, 117 U.S.App. D.C. 43, 46, 325 F.2d 616, 619 (1963), cert. denied 384 U.S. 994, 86 S.Ct. 1903, 16 L.Ed.2d 1009 (1966); Horton v. United States, 115 U.S.App.D.C. 184, 185, 317 F.2d 595, 596 (1963).

6. Green v. United States, *supra* note 5, at 200, 201 of 383 F.2d; Heard v. United States, *supra* note 5, 121 U.S.App.D.C. at 38, 348 F.2d at 44; Castle v. United States *supra* note 5, 120 U.S.App.D.C. at 401, 402, 347 F.2d at 495–496 (concurring opinion). See also Hutcherson v. United States, 120 U.S.App.D.C. 274, 280, 345 F.2d 964, 970 (concurring opinion), cert. denied 382 U.S. 894, 86 S.Ct. 188, 15 L.Ed.2d 151 (1965).

7. Green v. United States, *supra* note 5, at 201 of 383 F.2d; Heard v. United States, *supra* note 5, 121 U.S.App.D.C. at 38, 348 F.2d at 44.

8. See Heard v. United States, *supra* note 5, 121 U.S.App.D.C. at 39–40, 348 F.2d at 45–46; Castle v. United States, *supra* note 5, 120 U.S.App.D.C. at 399, 347 F. 2d at 493. See also Greene v. United States, *supra* note 5, 122 U.S.App.D.C. at 151, 352 F.2d at 367.

9. Green v. United States, *supra* note 5, at 201 of 383 F.2d. See also Hutcherson v. United States, *supra* note 6, 120 U.S. App.D.C. at 280, 345 F.2d at 970 (concurring opinion).

10. See Green v. United States, *supra* note 5, at 201 of 383 F.2d; Heard v. United States, *supra* note 5, 121 U.S.App.D.C. at 38 n. 2, 39–40, 348 F.2d at 44 n. 2, 45–46; Castle v. United States, *supra* note 5, 120 U.S.App.D.C. at 399–400, 347 F.2d at 493–494; Hightower v. United States, *supra* note 5, 117 U.S.App.D.C. at 45–46, 325 F.2d at 618–619.

11. We do not intend to imply that the expert witnesses limited themselves to bare conclusions. On the contrary, they supported their individual views in a manner sufficient, in our view, to promote adequate understanding by the jury.

12. Additionally, two of the lay witnesses related incidents of abnormal behavior on appellant's part.

13. One of the psychologists testified that there was no mental defect, but that he found a severe schizoid personality trait disturbance. The other psychologist stated that an examination of appellant in 1960 revealed schizophrenic trends.

14. One testified that appellant's schizoid characteristics were not sufficiently severe to constitute mental illness. The other found schizoid features only to a very limited degree and did not "even agree he has a schizoid personality."

In similar fashion, the evidence suggested divergent solutions for the problems of causality. The one psychiatrist finding mental illness opined that the offenses charged were its product,[15] but much of the testimony indicated the contrary. Two police officers stated, on personal observation, that appellant did not appear to be in a stage of withdrawal when arrested. The evidence discloses no symptom of withdrawal until about twenty hours after he was taken into custody. The two remaining psychiatrists concluded that withdrawal when the offenses were committed was medically improbable.[16]

In this milieu, the trial judge was called upon to "determine whether upon the evidence, giving full play to the right of the jury to determine credibility, weigh the evidence, and draw justifiable inferences of fact, a reasonable mind might fairly conclude guilt beyond a reasonable doubt."[17] Of course, as only recently we said, "the facts adduced as to the existence and impact of an accused's mental condition may be so overwhelming as to require a judge to conclude that no reasonable juror could entertain a reasonable doubt."[18] But when insanity is raised as a defense to crime, a judgment of acquittal by reason thereof, we have emphasized, should be granted only in exceptional cases.[19] And "in view of the complicated nature of the decision to be

15. The witness reasoned: Appellant had a schizoid personality which of itself did not impair behavioral controls. This personality disorder led to his addiction, and the combination resulted in mental disease. The criminal acts were committed to obtain money with which to purchase narcotics, with the result that the crimes were causally related to the addiction and were the product of mental disease.

This witness was unable to determine whether appellant was in a stage of withdrawal at the time of commission of the offenses. He stated, however, that he believed a statement by appellant that he was withdrawing at that time and that, if so, his behavioral controls would have been impaired.

16. To one of these witnesses it was "impossible" that a person "committing this type of an offense in the manner in which it was described" was in withdrawal. Rather, it seemed to the witness, appellant was in the "extremely long period * * * of perfectly rational, reasonable, coherent and normal behavoir" following an intake of narcotics. The other witness thought that there was "probably and very likely some connection" between the addiction and the offenses in that "in the search for narcotics, he committed this act in order to get money," but that an addict "is in perfectly good possession of his faculties and he is able to do what he has to do pretty much" during "a variable period" between the "flash" which follows one injection of heroin and the withdrawal which may precede the next. "This is the period," the witness continued, "when he knows what he is doing and he goes about doing what he wants to do." From the fact that for so long after his arrest appellant did not complain of withdrawal symptoms, this witness "would have to assume that prior to that time, he was in an adequate state of control and, gradually, did he begin to experience these symptoms of discomfort."

17. Curley v. United States, 81 U.S.App.D.C. 389, 392, 160 F.2d 229, 232, cert. denied 331 U.S. 837, 67 S.Ct. 1511, 91 L.Ed. 1850 (1947). See also, Rowe v. United States, 125 U.S.App.D.C. 218, 219, 370 F.2d 240, 241 (1966); Wright v. United States, 102 U.S.App.D.C. 36, 39, 250 F.2d 4, 7 (en banc 1957); Bates v. United States, 95 U.S.App.D.C. 57, 58–59, 219 F.2d 30, 32, cert. denied 349 U.S. 961, 75 S.Ct. 891, 99 L.Ed. 1283 (1955); Cooper v. United States, 94 U.S.App.D.C. 343, 345, 218 F.2d 39, 41 (1954); Pritchett v. United States, 87 U.S.App.D.C. 374, 375, 185 F.2d 438, 439 (1950), cert. denied 341 U.S. 905, 71 S.Ct. 608, 95 L.Ed. 1344 (1951); McGuire v. United States, 84 U.S.App.D.C. 64, 66, 171 F.2d 136, 138 (1948).

18. King v. United States, 125 U.S.App.D.C. 318, 324, 372 F.2d 383, 389 (1966).

19. Douglas v. United States, 99 U.S.App. D.C. 232, 237, 239 F.2d 52, 57 (1956). See also Gray v. United States, 115 U.S. App.D.C. 324, 327, 319 F.2d 725, 728 (concurring opinion), cert. denied 375 U.S. 849, 84 S.Ct. 104, 11 L.Ed.2d 76 (1963); Campbell v. United States, 113 U.S.App.D.C. 260, 261, 307 F.2d 597, 598 (1962); Turberville v. United States, 112 U.S.App.D.C. 400, 403, 303 F.2d 411, 414, cert. denied 370 U.S. 946, 82 S.Ct. 1607, 8 L.Ed.2d 813 (1962).

made—intertwining moral, legal, and medical judgments—it will require an unusually strong showing to induce us to reverse a conviction because the judge left the critical issue of criminal responsibility with the jury."[20] We think it clear that in this case the trial judge left it where it belonged.[21]

## II

After both sides rested, appellant submitted to the court three written requests for instructions to the jury, two of which were granted in substance The other, set forth below,[22] was properly denied. The request was inaccurate in its statement that "[a]ll the psychiatrists who testified * * * stated that in their opinion * * * [the] crimes were causally related to the addiction in the sense that he was deprived of narcotics at the time and was under a compulsive need to obtain them and to obtain money with which to obtain them."[23] Nor was it true that "the relationship of [appellant's] addiction to the crimes [is] not substantially disputed."[24] And, to the extent that the request sought to license the jury to "find that his narcotic addiction alone was such a mental abnormality as to substantially affect his mental or emotional processes and substantially impair his behavior controls," it flew into the face of our previous decisions.[25] The trial judge was not required to give the instruction in the shape in which it was proffered.[26]

Appellant's present position involves, however, a shift in emphasis as to the interconnection of his addiction and the insanity defense he advanced. While in the trial court the thrust of his claim was that narcotic addiction may of itself be a mental abnormality crippling emotional processes, he now insists that the jury should have been instructed to consider his addiction, not alone but in rela-

20. King v. United States, *supra* note 18, 125 U.S.App.D.C. at 324, 372 F.2d at 389.

21. Compare Castle v. United States, *supra* note 5, 120 U.S.App.D.C. at 400, 347 F.2d at 494; Rivers v. United States, 117 U.S.App.D.C. 375, 376, 330 F.2d 841, 842 (1964). See also Horton v. United States, *supra* note 5, 115 U.S.App.D.C. at 185, 317 F.2d at 596.

22. The requested instruction read:
    "The theory of the defense is that at the time of the crimes in question, the defendant was suffering from an abnormal condition of the mind called a schizoid personality disorder, and that this mental abnormality was associated with another abnormal condition of both mind and body, namely narcotic addiction. All the psychiatrists who testified both for the defendant and for the government, stated that in their opinion the defendant was actively addicted to narcotics on the date of the crimes, and that those crimes were causally related to the addiction in the sense that he was deprived of narcotics at the time and was under a compulsive need to obtain them and to obtain the money with which to obtain them. The fact of defendant's addiction and the relationship of that addition to the crimes are not substantially disputed. What is disputed is whether the narcotic addic-

    tion was the symptom [*sic*] and manifestation of an underlying mental illness.
    "You are instructed that if the defendant was under a compulsive need to obtain narcotics at the time of the offenses, and if he committed the offenses for that reason, then you may find that his narcotic addiction alone was such a mental abnormality as to substantially affect his mental or emotional processes and substantially impair his behavior controls. You are further instructed that in considering to what extent defendant's narcotic addiction was a mental abnormality, you may consider the causes of his addiction: whether his addiction was the voluntary act of a mentally normal person or whether it was the act of a person suffering from underlying abnormality."

23. See notes 15 and 16, *supra*, and related text.

24. See notes 15 and 16, *supra*, and related text.

25. See the cases cited *supra* note 6.

26. See Guerini Stone Co. v. P. J. Carlin Const. Co., 240 U.S. 264, 283, 36 S.Ct. 300, 60 L.Ed. 636 (1916); Ruffin v. United States, 106 U.S.App.D.C. 97, 98–99, 269 F.2d 544, 545–546, cert. denied 361 U.S. 865, 80 S.Ct. 129, 4 L.Ed.2d 107 (1959).

tion to other circumstances, as supporting the insanity defense. We have indeed recognized that "[t]here may well be some cases where prolonged and extensive use of narcotics has substantially impaired the capacity to control behavior, and a 'mental disease' within our [insanity] standards may result." [27] And when we pointed out that "a mere showing of narcotics addiction, without more, does not constitute 'some evidence' of mental disease or 'insanity'," [28] we hastened to add that this was "not to say that evidence that an accused is an addict is without probative value along with other evidence on the issue of responsibility." [29] Certainly, considering the evidence, the trial judge might properly have given an instruction focusing consideration on the combination of appellant's long-standing addiction and other indicia of mental involvement.

But appellant did not request specifically an instruction of the latter type, nor was the charge objected to on account of the fact that the trial judge did not volunteer one. In such circumstances, we would not set any sort of novel precedent were we to ignore the point.[30] On the other hand, the evidence was strong, not only as to appellant's addiction, but also as to a quantum of mental weakness arising independently of it, and appellant's request did implore, albeit faintly some advice associating the two for the benefit of the jury. We are thus constrained to explore the kind and degree of guidance the trial court afforded in this regard.

The trial judge gave a full and completely fair insanity charge during the course of which twice, for purposes of emphasis, he supplied the basic definition of mental illness:

"A mental disease, or a mental defect, in the eyes of the law for the purpose of this case, includes any abnormal condition of the mind which substantially affect [sic] the mental or emotional processes, and substantially impairs behavioral control.

"The term, 'behavioral control,' refers to the processes and ability of a human being to regulate and control his conduct and his actions."

We note initially that this definition, which the judge described as "the gist of the whole case," did not exclude, but was itself broad enough to embrace, combinational consideration of addiction with other factors in the determination of mental abnormality. Indeed, at one stage of the charge, "addiction" was put on the same plane with "disease" and "defect," *eo nomine*, as mental "conditions" which, weighed circumstantially with labels removed, might establish blameworthiness. Referring to the labels, including "narcotic addiction," the witnesses had used in their testimony, the judge admonished that

" * * * you must realize that the core of this problem is not one of labels, or technical, medical jargon. It is not a question of whether some condition is classified as being underlying, classified as being a *disease,* a *defect,* or *addiction.*

---

27. Green v. United States, *supra* note 5, at 201 of 383 F.2d.

28. Heard v. United States, *supra* note 5, 121 U.S.App.D.C. at 38, 348 F.2d at 44.

29. *Ibid.*

30. Very recently we refused, in circumstances quite similar to those appearing here, to consider on its merits a contention that another aspect of the addiction-insanity problem should have been a subject of the charge. Castle v. United States, *supra* note 5, 120 U.S.App.D.C. at 400–401, 347 F.2d at 494–495. See

also Singer v. United States, 380 U.S. 24, 38, 85 S.Ct. 783, 13 L.Ed.2d 630 (1965); Shepherd v. United States, 108 U.S.App.D.C. 240, 242, 281 F.2d 603, 605, cert. denied 364 U.S. 916, 81 S.Ct. 281, 5 L.Ed.2d 229 (1960); McCall v. United States, 89 U.S.App.D.C. 153, 154, 191 F.2d 470, 471 (1951). It seems that we cannot too strongly or too frequently call attention to the importance of adherence to the requirements of F.R.Crim.P. 30 if counsel's instructional wishes are to be effectuated.

"Rather, the key question that will unlock the door is whether this defendant, at the time he committed the act alleged in the indictment, was suffering from an abnormal *condition* of the mind and, if so, whether that *condition* substantially affected his mental or emotional processes and substantially impaired his behavioral control." (Emphasis supplied.)

Additionally, the trial judge in his charge referred to the "voluminous testimony in this case concerning the narcotic addiction of the defendant," and told the jury that "[n]arcotic addiction, without something more" would not establish insanity. This rather clearly implied that coupled with "something more" addiction might amount to insanity. This implication was soon made explicit when the judge, very much in line with the theory of the defense, informed the jury that it might

"* * * consider whether the defendant in this case was using drugs at the time of the alleged offense and, if so, whether at the time of the alleged offense, the intake and the effect of the drug so substantially affected his controlled [*sic*] processes and so substantially impaired his behavioral control so that he could not control his common sense at the time."

▮ Benefited by hindsight, one may say that the instructions did not connect mentality with addiction as clearly as might have been done. But in our view they did not disfavor but actually encouraged the alliance. It seems to us that there was enough to have the jury understand that any factor or group of factors—including narcotic addiction and barring only "[n]arcotic addiction, without something more"— which met the test for insanity would suffice to immunize appellant from conviction.[31] We think, too, that an assumption that to have said more might have resulted in a different verdict would involve a high degree of speculation. At the very least, we must appraise the situation as clearly unexceptional and the probability of prejudice as quite doubtful. In these circumstances, we feel that reversal is neither required nor warranted.[32]

While, on this appeal, we so conclude, we utilize this opportunity to say a word of caution. We trust that, with what we have said, it is now clear that defense counsel should ask for an instruction on the combinational effect of any narcotic addiction and mental deficiency indicated by substantial evidence. Trial judges will in the future be well advised to consider such an instruction in appropriate situations, whether requested or not.[33] We affirm here because we perceive no prejudice, but in another case there quite easily could be. A proper determination

31. Compare Castle v. United States, supra note 5, 120 U.S.App.D.C. at 400, 347 F.2d at 494, where we affirmed a conviction although we recognized that the trial judge's charge "perhaps suffers somewhat, in terms of its helpfulness to the jury in evaluating the defense of insanity based on drug addiction, from its failure to refer expressly to the relationship which narcotics addiction may be found to have to mental disease or defect." See also Ruffin v. United States, *supra* note 26, 106 U.S.App.D.C. at 98–99, 269 F.2d at 545–546; May v. United States, 84 U.S.App.D.C. 233, 250, 175 F.2d 994, 1011, cert. denied 97 L.Ed. 666, 338 U.S. 830, 70 S.Ct. 58, 94 L.Ed. 505 (1949); Weldon v. United States, 87 U.S.App.D.C. 113, 116, 183 F.2d 832, 835 (1950), cert. denied 343 U.S. 967, 72 S. Ct. 1063, 96 L.Ed. 1364 (1952).

32. Compare Hardy v. United States, 119 U.S.App.D.C. 364, 365, 343 F.2d 233, 234 (1964), cert. denied 380 U.S. 984, 85 S. Ct. 1353, 14 L.Ed.2d 276 (1965); Jackson v. United States, 91 U.S.App.D.C. 60, 198 F.2d 497, cert. denied 344 U.S. 858, 73 S.Ct. 96 (1952); Cratty v. United States, 82 U.S.App.D.C. 236, 242, 163 F. 2d 844, 850 (1947).

33. We are advertent to the difficult problems trial judges frequently encounter in deciding whether to charge on particular subjects, especially when unsolicited legal propositions might impinge upon defense strategy, which is the responsibility of counsel. We suggest that ofttimes the dilemma can be dissolved by the simple expedient of thrashing the matter out with counsel before the charge is delivered.

of criminal responsibility is too transcendent a matter to be exposed to that sort of risk.

Affirmed.

FAHY, Senior Circuit Judge (concurring in part, dissenting in part):

As well stated in the opinion of the court the evidence on the issue of insanity created a factual issue for the jury to decide. I concur, therefore, in the decision that a directed verdict of acquittal by reason of insanity was properly denied.

As to the instructions to the jury I find myself in respectful disagreement with the opinion of the court. The matter is important both in general and in the particular case. Its general importance is evidenced by previous decisions of this court. As the present opinion demonstrates, we have several times pointed out the appropriateness of consideration by the jury of narcotic addiction in combination with other evidence of mental disease in determining whether a defense of insanity is established.[1] There was abundant evidence, other than narcotic addiction, to support such an instruction. The administration of justice in these cases should I think conform with the decisions which have considered and supported such an instruction, the salutary character of which can hardly be questioned.

The matter is important in the particular case because of the difference in the law's disposition of one convicted of crime and one acquitted by reason of insanity. The former is ordinarily imprisoned, followed by release into the community when his sentence is ended. The latter is committed to a mental institution, where there is greater opportunity for rehabilitation before he returns to the community and therefore greater likelihood of advantage to the individual as well as to the community. This view[2] has recently been expressed by the Court of Appeals for the Second Circuit, as follows:

The criminal law, it has been said, is an expression of the moral sense of the community. The fact that the law has, for centuries, regarded certain wrong-doers as improper subjects for punishment is a testament to the extent to which that moral sense has developed. Thus, society has recognized over the years that none of the three asserted purposes of the criminal law—rehabilitation, deterrence and retribution—is satisfied when the truly irresponsible, those who lack substantial capacity to control their actions, are punished.

What rehabilitative function is served when one who is mentally incompetent and found guilty is ordered to serve a sentence in prison? Is not any curative or restorative function better achieved in such a case in an institution designed and equipped to treat just such individuals? And how is deterrence achieved by punishing the incompetent? Those who are substantially unable to restrain their conduct are, by definition, undeterrable and their "punishment" is no example for others; those who are unaware of or do not appreciate the nature and quality of their actions can hardly be

---

1. Indeed addiction alone may be severe enough to raise the insanity defense to a level proper for jury consideration. Green v. United States, 122 U.S.App.D.C. 33, 351 F.2d 198; United States v. Freeman, 357 F.2d 606 (2d Cir.) where alcoholism was also present; cf. Hightower v. United States, 117 U.S.App.D.C. 43, 325 F.2d 616, dissenting opinion. It is unnecessary now to pursue this subject in passing upon the more limited problem before us.

2. I referred to this idea briefly in Douglas v. United States, 99 U.S.App.D.C. 232, 239, 239 F.2d 52, 59–60, and see Overholser v. O'Beirne, 112 U.S.App.D.C. 267, 273, 302 F.2d 852, 858; Ragsdale v. Overholser, 108 U.S.App.D.C. 308, 312, 314, 281 F.2d 943, 947, 949. See, also, Tydings, A Federal Verdict of Not Guilty by Reason of Insanity and a Subsequent Commitment Procedure, 27 Md. L.Rev. 131, 140 (1967).

expected rationally to weigh the consequences of their conduct. [Footnote omitted.]

United States v. Freeman, 357 F.2d 606, 615 (2d Cir.).

The omission of an instruction that the jury could consider narcotic addition in combination with other evidence of mental disease, on the issue of criminal responsibility, leaves imprisonment effective whereas if the instruction had been given, hospitalization might have resulted. We cannot be certain of course; but the jury needed the guidance to which the accused, the jury and the community were entitled.

True it is the instruction offered by defense counsel was not in acceptable terms. But it did point up, as had the evidence, the relation of the admitted addiction to the defense of insanity. Indeed, the trial court did not entirely neglect the problem created by the use of drugs; for it instructed the jury it could consider whether at the time of the offense charged defendant was using drugs. But this did not meet the real point, which was that the addiction itself, not the use of drugs at the particular time, could be considered by the jury in combination with the other evidence of mental disease, in deciding the issue of criminal responsibility.

The otherwise generally high quality of the instructions does not cure the matter, as it seems to me, nor does the persuasiveness of the court's opinion in demonstrating the possibility that the jury bridged the gap on the basis of the general language the court quotes; for this language did not call the jury's at-

tention to the very thing that was critical under the law, the relationship of the accused's addiction to his insanity defense.[3]

---

3. An instruction requested by defense counsel, while not accurately aimed at the subject, did suggest it:

The theory of the defense is that at the time of the crimes in question, the defendant was suffering from an abnormal condition of the mind called a schizoid personality disorder, and that this mental abnormality was associated with another abnormal condition of both mind and body, namely narcotic addiction.

This requested instruction concluded:

You are further instructed that in considering to what extent defendant's narcotic addiction was a mental abnormality, you may consider the causes of his addiction: whether his addiction was the voluntary act of a mentally normal person or whether it was the act of a person suffering from underlying abnormality.

This was followed by a citation of Heard. [Heard v. United States, 121 U.S.App. D.C. 37, 348 F.2d 43.]