**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**INDIAN TRAILER CORPORATION** and
Harry L. Bartholomew, Defendants-
Appellants.

**No. 11359.**

United States Court of Appeals
Seventh Circuit.

Oct. 21, 1955.

Rehearing Denied Nov. 18, 1955.

Joseph E. Green, Richard E. Gorman, Chicago, Ill., for appellants.

Robert Tieken, U. S. Atty., Anna R. Lavin, Atty., John Peter Lulinski, Mitchell S. Rieger, F. William Reeb, Asst. U. S. Attys., of counsel, for appellee.

Before DUFFY, Chief Judge, and MAJOR and SWAIM, Circuit Judges.

DUFFY, Chief Judge.

Defendants, Indian Trailer Corporation and Harry L. Bartholomew, its president, were convicted under a single count indictment of violation of § 145(b), Title 26 U.S.C.A., to-wit: of wilfully and knowingly attempting to evade a large part of the tax owing by the corporation for the fiscal year ending October 31, 1946, by filing false and fraudulent returns.

The cause was tried as a consolidated case with two other indictments in one of which Harry L. Bartholomew was charged with a like crime in regard to his individual income for the calendar year 1946, and in the other, Bartholomew's wife, Julia, was charged with a like crime in regard to her individual income for the same year. The jury disagreed as to the charges in the indictment naming Harry L. Bartholomew individually, and acquitted Julia Bartholomew of the charges made in the indictment against her.

Defendants rely on four principal claims of error. 1) Failure to sustain a Motion to Dismiss which raised the question of the Statute of Limitations; 2) The refusal to admit a record of the corporation known as "Bill of Materials"; 3) Admitting as a matter of rebuttal a 12-page stenographic transcript of an interview of government agents with defendant Bartholomew; and 4) based on instructions given and refused.

The indictment in the case at bar was returned on January 7, 1953. It alleges the filing of false and fraudulent returns on January 9, 1947. The 6-year Statute of Limitations is applicable. Proof was offered by defendants that the returns were, in fact, filed on January 6,

1947, and that the indictment was thus barred by the Statute of Limitations.

Bartholomew testified that on January 4, 1947, a Saturday, he signed three checks each drawn on the corporation's account, and each made payable to the Collector of Internal Revenue, and that said checks were numbered consecutively. The first of these checks, No. 8544, in the amount of $21,823.70, was in payment of the final portion of the taxes owing on the corporate return in question, and was stapled to such return; the second of such checks, No. 8545, was in the amount of $8,046.77 and was given in payment for the excess profits tax for the fiscal year under consideration, to which return it was likewise stapled; the third of said checks, No. 8546, was in the amount of $8,500.00 and was given to discharge a quarterly payment upon Bartholomew's individual declaration of estimated tax, such declaration being also stapled to the check. He testified that all three checks were prepared by his bookkeeper, given to him by his auditor, Weinig, and simultaneously signed by him, and that all three returns, with checks attached, were placed in a single envelope with postage prepaid, duly addressed to the Collector of Internal Revenue.

It was stipulated that in the event mail was posted in a box at either of the post offices where Bartholomew customarily deposited the company mail, it would reach the Collector's office in the ordinary course of the mails on Monday, January 6, 1947. On the face of the declaration of the estimated tax, which was paid by check No. 8546, there appears a government stamp showing the document was received by the Collector on January 6, 1947. Mr. Weinig, the auditor, testified that the two returns of the corporation and the declaration of estimated individual tax were signed on January 4, 1947, and that the three checks, Nos. 8544, 8545 and 8546 were prepared in sequence on that day. Mrs. Bartholomew testified that she placed the envelope in the mail at a certain post office

box which she identified as being the box she always used when posting mail for the company.

It is apparent that a strong showing was made that all of the documents were mailed to the Collector on January 4, and it is without dispute that one of them was received by the Collector on January 6. If the other two were received on the same date, prosecution on the indictments was barred by the Statute of Limitations.

On this point the government called only one witness who testified that he was in charge of receiving tax returns in the office of the Collector in Chicago, and he described the customary procedure. He testified that the stamp showing the date of the receipt of the income tax return of the corporation was January 8, 1947, and this indicated that the return was actually received by the Collector's office on that date. It further appeared in answer to the trial court's questions, that all three checks had cleared the bank on the same day, January 9, 1947. Judge Barnes, who heard the testimony on the Motion to Dismiss, made a finding that the return in question was actually received by the Collector on January 8, 1947. There was some evidence which, if believed by him, supports such finding. Improbable though it may seem to us, we cannot disturb the court's finding as he was the sole judge of the credibility of the witnesses who testified before him.

Defendant, Indian Trailer Company, was in the business of manufacturing mobile house trailers to be sold to dealers or distributors. It was the theory of the government's case that during the period in question the distributors paid to defendants $200.00 per trailer over the invoice price, and that such receipts were not shown on the books of the corporation, nor were they otherwise accounted for to the government. The defendants admitted that Bartholomew received money from distributors, the receipt of which was not shown on the books of the corporation, but claimed that such funds

were used for the purchase of scarce materials used in the manufacture of trailers, which purchases likewise did not appear on the records of the corporation, same having been obtained at over-ceiling prices. Defendants claim the monies so received were placed by Bartholomew into a procurement pool or "kitty" which was not a fund of the corporation, and that this fund was totally exhausted by using same for the purposes for which it was established. Bartholomew claimed he never received full reimbursement for his own personal advances to the corporation from his own funds.

During the period in question trailers such as manufactured by defendant corporation were in short supply and there was a broad market for same. The distributors and dealers were clamoring for more trailers than they had been receiving. Testimony was received showing that many more trailers were produced than could have been manufactured with material obtained from regular sources of supply. The evidence is quite clear that many of the distributors and dealers knew that the monies they paid over the regular invoice price was due to the difficulty defendants were having in obtaining material necessary for the construction of the trailers. Nevertheless, if the only question before us was the sufficiency of the evidence, we would feel that the judgment should be affirmed although we recognize that the case was a close one. Any claimed error must be closely scrutinized, for such error might have been the deciding influence which caused the jury to find the defendant corporation and its president guilty.

We think serious questions are presented as to an instruction which was refused and in the admission of certain evidence offered by the government.

■ In considering whether substantial and prejudicial error was committed, we must keep in mind that the burden was upon the government to prove beyond a reasonable doubt that the defendant did wilfully and knowingly attempt to defeat and evade taxes as al-

leged, and that the burden of proof never shifted to the defendant. United States v. Fenwick, 7 Cir., 177 F.2d 488, 492. And, on the question of instructions " * * * the defendant is entitled to have presented instructions relating to a theory of defense for which there is any foundation in the evidence, even though the evidence may be weak, insufficient, inconsistent, or of doubtful credibility." Tatum v. United States, 88 U.S.App.D.C. 386, 190 F.2d 612, 617.

■ Defendants tendered the following instruction which was refused: "The court instructs the jury that if amounts of money over and above invoice payments were received by the defendants or any of them under understandings and agreements that such moneys would be placed in a fund and would be used to purchase materials in order that the contributors to the fund would get more trailers, then such payments and such fund would not constitute income to any of the defendants in these cases and you should find all and each of said defendants not guilty." This tendered instruction was consistent with what the defendants, in their opening statement, asserted would be proved, and the theory which was supported by testimony of some of the defendants' witnesses.

The defendants were entitled to have an instruction based upon their theory of the case. This was not a prosecution for selling trailers at over-ceiling price. The big question before the jury should have been whether there was a wilful intent to evade taxes. We hold failure to give such instruction was error. Marson v. United States, 6 Cir., 203 F.2d 904, 912.

On April 11, 1951, Bartholomew was interviewed by revenue agents at the office of the Intelligence Unit of the Bureau of Internal Revenue. The government offered in evidence a 12-page transcript of the questions there asked and the answers given. Over the objection of defendants the document was received in evidence and later the jury took same to the jury room. The only impeaching

question asked of Bartholomew was with reference to a question appearing on page 5 of the transcript: "Q. Did you, Mr. Bartholomew, ever solicit, request, receive or collect any amount representing over-payment or payment in excess of invoice price for trailers sold to your customers during the year 1946? A. I did not." The witness admitted that he made the answer appearing in the transcript and gave testimony in explanation thereof.

■■ If the government desired to have the entire 12-page transcript received into evidence, impeaching questions should have been asked. Bartholomew was entitled to have his attention drawn to the particular statement proposed to be proven. Mattox v. United States, 156 U.S. 237, 15 S.Ct. 337, 39 L.Ed. 409. The exhibit in question contained questions and answers on matters that had little, if any, relevance to the case at bar, and may well have been prejudicial to the defendants. To illustrate, there were questions pertaining to threats Bartholomew had received from dealers because of his activities as President of the Capital Trailer Coach Association; the reference to checks received from dealers who were not witnesses in the case; the account of a fire at defendant's plant in 1945, and the disposition made of the insurance proceeds. We think the admission of this document was error.

■■ Defendant sought to introduce into evidence a document entitled "Bill of Materials" which contained a list of items necessary to produce a trailer coach according to the specifications then in use. Defendant Bartholomew testified the materials listed were identical with the materials necessarily used during the period in question.

The importance to the defendants of having this information before the jury is their claim that it would establish that their expenditures for materials were, in fact, greater than the amount shown on their tax return, and that the monies paid in by their dealers and distributors were expended for materials not shown on the company's books. Defendants insist that this Exhibit would demonstrate that all the trailers actually produced by the company during the period in question could not possibly have been manufactured using only the goods which were purchased with the company's funds.

Defendants' inventory of materials on hand at the beginning of the period (October 31, 1945) was received in evidence. Likewise received were defendants' purchases as per invoice of steel channels, nails, and wires during the pertinent period. Also received was the inventory of such materials as remained at the close of the period. Defendants contend that to complete the proof necessary to tell the true story of the amount of materials that went into the construction of the trailer coaches, defendants offered Exhibit 35, the Bill of Materials. The trial court ruled Exhibit 35 was not admissible.

Whether Exhibit 35 should have been received into evidence depends upon the interpretation of Title 28 U.S.C.A. § 1732. That statute, in pertinent part, reads:

Title 28, § 1732(a) "In any court of the United States * * * any writing or record, whether in the form of an entry in a book or otherwise, made as a memorandum or record of any act, transaction, occurrence, or event, shall be admissible as evidence of such act, transaction, occurrence, or event, if made in regular course of any business, and if it was the regular course of such business to make such memorandum or record at the time of such act, transaction, occurrence, or event or within a reasonable time thereafter.

"All other circumstances of the making of such writing or record, including lack of personal knowledge by the entrant or maker, may be shown to affect its weight, but such

circumstances shall not affect its admissibility."

One of the purposes of this statute was to avoid the strict requirements of the common law which made it necessary to produce as witnesses, every person who had anything to do with the record, in order to prove its authenticity. However, the requirement remains that the record must be made in the regular course of business evidencing acts, transactions, occurrences, or events taking place on or about that time. Palmer v. Hoffman, 318 U.S. 109, 115, 63 S.Ct. 477, 87 L.Ed. 645.

Exhibit 35 was prepared more than one month after the close of the fiscal year set forth in the indictment. No "acts, transactions, occurrences, or events," within the meaning of § 1732 are evidenced by the document. It does not appear that the Exhibit was a periodic analysis or summary which was customarily kept in the regular operation of its business. We think it did not meet the requirements of § 1732 and was not admissible into evidence.

By what we have said we do not mean to indicate that Exhibit 35 could not be used at all. We think such a document could be used as a memorandum to refresh Bartholomew's memory if the proper foundation is laid showing the data was obtained from the books and records of the company.

We hold that the errors committed affected the substantial rights of the defendants and cannot be regarded as harmless errors under Rule 52 Federal Rules of Criminal Procedure, 18 U.S. C.A. Bihn v. United States, 328 U.S. 633, 66 S.Ct. 1172, 90 L.Ed. 1485; United States v. Donnelly, 7 Cir., 179 F.2d 227, 233.

The judgment of conviction is reversed and the cause is remanded for a new trial.

Reversed.