James CASTLE, Appellant,

v.

UNITED STATES of America,
Appellee.

No. 17894.

United States Court of Appeals
District of Columbia Circuit.

Argued March 9, 1964.

Decided Nov. 19, 1964.

Certiorari Denied May 24 and
June 7, 1965.

See 85 S.Ct. 1568, 1811.

Mr. Worth Rowley (appointed by this court), Washington, D. C., for appellant.

Mr. Gerald A. Messerman, Asst. U. S. Atty., with whom Messrs. David C. Acheson, U. S. Atty., and Frank Q. Nebeker and Timothy C. Murphy, Asst. U. S. Attys., were on the brief, for appellee.

Before BURGER, WRIGHT and McGOWAN, Circuit Judges.

WRIGHT, Circuit Judge:

In this narcotics case, the primary issues raised concern appellant's claim that, because of his narcotics addiction, he lacked the capacity to commit the offense, and that the trial court erred in failing to direct a judgment of acquittal.

The evidence against appellant was that eleven capsules of heroin were found, after a search with warrant, in a dresser drawer in appellant's bedroom. By virtue of statutory presumptions arising from possession, appellant was convicted of purchasing drugs without a tax stamp, and of facilitating the concealment and sale of drugs knowing them to have been imported contrary to law. 26 U.S.C. § 4704(a); 21 U.S.C. § 174.

There was also undisputed evidence that appellant was an active addict at the time of the offense, habitually taking twelve capsules of heroin a day, with a long history of addiction. Seven months prior to the offense he had voluntarily committed himself for examination as a drug user and had been treated for withdrawal symptoms, but was not accepted by hospital authorities for rehabilitative treatment. On the day after the offense and arrest here, he was admitted to the jail hospital suffering from withdrawal symptoms.

At trial and before us, appellant attempted to make out his theory of defense in alternative versions. In support of his claim of lack of guilt by reason of insanity, he urged that (1) narcotics addiction can itself be a mental disease which, if it causes criminal behavior, warrants a verdict of not guilty by reason of insanity, and (2) active narcotics addiction is evidence from which an underlying mental disease or defect may be found, also resulting in a verdict of not guilty if causal relationship is established. A second major theory of defense was cast in terms of a duress or compulsion to consume drugs to prevent withdrawal symptoms, with no criminal responsibility where active narcotics addiction is shown to induce a mental state or physical condition exerting such duress or compulsion.

In support of these defenses, appellant adduced testimony at trial which reflected the following viewpoint: Chronic narcotics addiction is characterized by "an overpowering desire or need (compulsion) to continue taking the drug and to obtain it by any means." WORLD HEALTH ORGANIZATION, TECHNICAL REPORT NO. 21, p. 6 (1950). The addict's physical dependence is "the development of an altered physiological state which is brought about by the repeated administration of the drug and which necessitates continued administration of the drug to prevent the appearance of the characteristic illness which is termed an abstinence syndrome. * * * [Physical dependence] forces the addict to seek his drugs by any and all means. The first concern of many addicts becomes obtaining and maintaining an adequate supply of drugs." Counsel of Mental Health, American Medical Association, *Report on Narcotic Addiction*, 165 J.A.M.A. 1707, 1713 (1957). There is also a "psychological dependence [which] is, of course, related to the effects opiates create within the central nervous system." *Ibid.* See also KOLB, NARCOTIC ADDICTION 95 (1962). Thus the dependence has been described as "the body's slavery to the continued use of opiates." *Id.* at 4. For the addict with a strong habit, abrupt withdrawal is dangerous. Kolb and Himmelsback, Clinical Studies of Drug Addiction, 94 AM.J. OF PSYCH. 759, 781 (1938).

■ The testimony at trial explained to the jury the degree of appellant's dependence on drugs and the nature of addiction and of the withdrawal syndrome. The testimony also provided a basis from which the jury, under proper instructions, could have found a causal relationship between appellant's drug-related abnormality and the criminal behavior charged.[1] Thus the issue was one for the jury. The jury could have concluded that appellant had a mental disability which caused the acts charged. But, on this evidence, the jury need not have done so, nor need it have had a reasonable doubt on this issue. Therefore, the trial court was correct in not directing judgment of acquittal by reason of insanity. See McDonald v. United States, 114 U.S.App.D.C. 120, 312 F.2d 847 (1962).

■ Questions are also raised as to the charge on this issue. The charge read, in part:

"A mental disease or a mental defect in the eyes of the law and for the purpose of this case, includes any abnormal condition of the mind which substantially affects mental or emotional processes and substantially impairs behavior controls. The term 'behavior controls' refers to the processes and ability of a human being to regulate and control his conduct and his actions.

\* \* \* \* \* \*

"[The jury may consider as one factor:] Did his mental condition substantially disable the defendant from being able to control his conduct so as to refrain from doing the act charged?"

This charge was correct as far as it went. See McDonald v. United States, *supra*. It perhaps suffers somewhat, in terms of its helpfulness to the jury in evaluating the defense of insanity based on drug addiction, from its failure to refer expressly to the relationship which narcotics addiction may be found to have to mental disease or defect as set forth, for example, in the defense theories (1) and (2) on insanity described above. We do not, however, believe that this deficiency is such as to warrant reversal on this record.

■ ■ With respect to appellant's theory of duress, it is said that the charge did not cover appellant's request to tell the jury it could acquit if it found "pharmacological duress." An act committed under compulsion, such as apprehension of serious and immediate bodily harm, is involuntary and, therefore, not criminal. Gillars v. United States, 87 U.S.App.D.C. 16, 30 and n. 14, 182 F.2d 962, 976 and n. 14 (1950); see cases collected in Annot., 40 A.L.R.2d 908 (1955). Although, as in *Gillars*, these apprehensions ordinarily are not self-generated, it is argued that a jury might well find duress of exculpatory dimension in the eyes of the law based on an active addict's apprehension of major withdrawal symptoms. We note that here the crimes charged were purchase, receipt and concealment by appellant in his own bedroom of a quantity of drugs equal to one day's habit, and that appellant was treated for

1. This court has recently stated in a unanimous opinion in Brown v. United States, 118 U.S.App.D.C. 76, 77, 331 F.2d 822, 823 (1964) :

"\* \* \* '[N]arcotic addiction is an illness. \* \* \* "Of course it is generally conceded that a narcotic addict, particularly one addicted to the use of heroin, is in a state of mental and physical illness."' Robinson v. California, 370 U.S. 660, 667 and n. 8, 82 S.Ct. 1417, 1420, 8 L.Ed.2d 758 (1962). 'They are diseased and proper subjects for such [medical] treatment \* \* \*.' Linder v. United States, 268 U.S. 5, 18, 45 S.Ct. 446, 449, 69 L.Ed. 819 (1925). The defense of insanity based on drug addiction generally presents a jury issue as to criminal responsibility. Horton v. United States, 115 U.S.App.D.C. 184, 317 F.2d 595 (1963); Rivers v. United States [117 U.S.App.D.C. 375], 330 F.2d 841 (1964). The trier of fact must decide whether the defendant had a mental disability and, if so, whether his act was the product thereof. Hightower v. United States, 117 U.S.App.D.C. [43, 45–46], 325 F.2d 616, 618–619 (1963)."

withdrawal symptoms shortly after the offense and arrest. But the appellant's requested instructions were not correct in the form submitted and denied, and no supplemental requests were made. Nor was any objection made to the charge as given. Under the circumstances, we do not reach the merits of the point on appeal.

Appellant also raises a number of other issues which we have carefully considered; some of these require discussion. A basic contention is the thesis that since Robinson v. California, 370 U.S. 660, 82 S.Ct. 1417, 8 L.Ed.2d 758 (1962), prohibits the imposition of criminal penalties upon an addict for his status of addiction, it would be to distinguish where there is no difference to allow a conviction and five-year sentence for the purchase, possession and concealment by an addict of his daily dosage. We feel that that argument, although neither remote nor insubstantial, is one which, in the light of the great weight of the cases which have imposed such punishment, is more properly to be made to the Supreme Court.

We note also that the court granted, over defense objection, a motion made by the United States Attorney on the day set for trial to submit appellant for mental examination. The Government had advance notice in writing from the defendant that the insanity defense would be raised; yet it was unprepared to meet it. Hence the motion for mental examination.

■■ A stated purpose for the examination, in addition to determining criminal capacity at the time of the act charged, was to inquire into competency. Defense counsel, however, announced appellant ready for trial and the court itself did not question the appellant's mental condition. See 24 D.C.Code § 301(a) (1961). We have stressed that the decision on competency is essentially a judicial one, but we have never authorized delays in trial over defense objection on a bare allegation by the prosecutor that the defendant was incompetent.

Here, however, where there was some uncertainty as to the contents of a psychiatric report on appellant, and where the trial judge acted to minimize delay, we do not find reversible error.

As always, the court is grateful to assigned counsel; it is the efforts of such members of the bar which make possible the equal administration of criminal justice.

Affirmed.

BURGER, Circuit Judge (concurring in the result):

I agree with the affirmance of the conviction but I do not agree with the obiter dictum observations which are made up essentially of a recital of the allegations and claims of the appellant concerning the nature of narcotics addiction rather than observations of the court. The general comments on narcotics addiction drawn from appellant's brief are simply a summary of the views of some writers on the subject. Neither this court nor any other court has ever held that drug addiction is per se a form of mental disease or "insanity" in the context of assessing criminal responsibility.

Robinson v. California, 370 U.S. 660, 82 S.Ct. 1417, 8 L.Ed.2d 758 (1962), had nothing to do with the problems of criminal responsibility, which is the only issue presented by the case now before us. In *Robinson* the Supreme Court held nothing more than that a state cannot make narcotics addiction a crime any more than it could declare "having a common cold" to be a crime; this obviously correct conclusion is the sum total of its holding.

The majority opinion in the present case contains the following statement as a quotation from *Robinson* (as quoted in our own case, Brown v. United States, 118 U.S.App.D.C. 76, 77, 331 F.2d 822, 823 (1964)):

"* * * '[N]arcotic addiction is an illness. * * * "Of course it is generally conceded that a narcotic addict, particularly one addicted to the use of heroin, is in a state of

mental and physical illness." ' Robinson v. California, 370 U.S. 660, 667 and n. 8, 82 S.Ct. 1417, 1420, 8 L.Ed. 2d 758 (1962)."

To the extent this gives the impression that *Robinson* either held or said that addiction is a mental disease, it is misleading. The first five words are indeed an accurate quotation from the body of the *Robinson* opinion,[1] while the quoted sentence following those words does not actually appear in the text of *Robinson* and most certainly does not represent a holding of the *Robinson* case or even a statement of the Supreme Court's views. Examination of the *Robinson* opinion at page 667, 82 S.Ct. at page 1420 shows that the source of the latter part of the above quote is note 8 in which the Court alludes to a statement in the brief of the appellee:

"In its brief the appellee stated: 'Of course it is generally conceded that a narcotic addict, particularly one addicted to the use of heroin, is in a state of mental and physical illness. So is an alcoholic.' "

By quoting this statement the Supreme Court in no sense held or implied that either drug addiction or alcohol addiction is to be equated with "insanity." By the same token, I assume that the majority opinion here does not adopt any or all of Castle's contentions by reciting them. It should therefore be clear that neither this court nor the Supreme Court has held in any sense that addiction is a "mental disease" or "insanity" in the context of determining criminal responsibility.

Whether a given condition is a mental disease is an issue of fact dependent upon evidence and when there is evidence warranting submission to the jury it is for the jury to decide whether that evidence adds up to "mental disease." In *McDonald* we sought to establish a yardstick which would reduce the significance of medical labels by defining mental illness, for the purposes of the criminal

law, as being an abnormal condition of the mind which substantially affects mental or emotional processes and substantially impairs capacity to control behavior.

Note 1 of the majority opinion also states: "The defense of insanity based on drug addiction generally presents a jury issue as to criminal responsibility. Horton v. United States, 115 U.S.App. D.C. 184, 317 F.2d 595 (1963); Rivers v. United States [117 U.S.App.D.C. 375], 330 F.2d 841 (No. 17,950, decided March 5, 1964)."

However, an examination of the *Horton* and *Rivers* cases reveals that neither of them stands for a proposition as broad as is set forth in note 1. In both *Horton* and *Rivers* there was expert medical testimony that appellants had a "mental disease"; for that reason, and not because of narcotics addiction, these cases presented a criminal responsibility issue for the jury. In neither *Horton* nor *Rivers* was this court faced with deciding whether narcotics addiction, standing alone and without testimony of mental disease, was evidence of "insanity." To the extent that the majority opinion gives intimations that narcotics addiction per se raises the issue of criminal responsibility, it is not an accurate reflection of our holdings; if that were so, virtually every narcotics case in the courts would have the issue. I assume we can take judicial notice, from hundreds of cases in this court, that the street "peddlers" and "pushers" of narcotics are almost invariably themselves narcotics addicts who are exploited by those who control the narcotics rackets. It is not too difficult to contemplate how much more effectively these unfortunates could be exploited if this court were to equate addiction per se with "insanity," thus opening the door to evading the severe penalties Congress has fixed for trafficking in narcotics. Certainly some addicts are mentally ill persons and some mentally ill persons are addicts, and in

---

1. These five words add up to a statement of the long-accepted medical view that narcotics addiction is a *physiological* disease.

some cases it is difficult for the experts to determine whether mental disorder led to addiction or the addiction brought on mental disorder; when both are present the basic difficulty of isolating what we call diseases of the mind from those of the body are compounded. But it is not correct to suggest that all addicts are "insane" any more than to suggest that all criminals are "insane."

The core of the problem since our *McDonald* holding is not one of labels whether "disease" or "addiction" but whether an abnormal condition of the mind has substantially impaired the accused's capacity to control his behavior.