Chrisp **HEARD, Jr.,** Appellant,

v.

**UNITED STATES** of America,
Appellee.

No. 18290.

United States Court of Appeals
District of Columbia Circuit.

Argued May 15, 1964.

Decided Dec. 17, 1964.

Petition for Rehearing en Banc

Denied May 12, 1965.

Statement June 14, 1965.

J. Skelly Wright, Circuit Judge, dissented.

Bazelon, Chief Judge, filed a statement on denial of a rehearing en banc.

Mr. Terry Nevel, Washington, D. C., with whom Mr. Walter A. Slowinski, Washington, D. C., (both appointed by

this court), was on the brief, for appellant.

Mr. John A. Terry, Asst. U. S. Atty., with whom Messrs. David C. Acheson, U. S. Atty., Frank Q. Nebeker and Joseph A. Lowther, Asst. U. S. Attys., were on the brief, for appellee.

Before DANAHER, BURGER and WRIGHT, Circuit Judges.

PER CURIAM:

■ Appellant was convicted on nine counts of an indictment charging violations of 68A STAT. 551 (1954), as amended, 26 U.S.C. § 4705(a) (1958), 68A STAT. 550 (1954), as amended, 26 U.S.C. § 4704(a) (1958), and 70 STAT. 570 (1956), 21 U.S.C. § 174 (1958), for participation in narcotics transactions on three separate occasions. The principal issue on appeal is whether the evidence required the District Court to instruct the jury on criminal responsibility as requested.[1] The mental condition relied upon by appellant as the basis for the instruction arises out of his addiction to narcotic drugs.

■ To raise the issue of criminal responsibility, it must appear from the evidence that the accused, at the time of the alleged criminal act, suffered from some mental disease or defect, which we have defined as meaning an abnormal condition of the mind which substantially impairs capacity to control behavior. McDonald v. United States, 114 U.S.App. D.C. 120, 124, 312 F.2d 847, 851 (1962). This mental condition may be shown by observation and opinions of lay witnesses or experts; it does not depend upon psychiatric labels, or medical classifications and terms, although testimony of an expert giving a diagnosis of a mental disease or defect, in those terms, would raise the issue for jury determination. Lay testimony describing significantly bizarre, abnormal conduct also could be sufficient to raise the issue. We have said this must be "more than a scintilla," of evidence. McDonald v. United States, *supra*. In the first instance the question whether the evidence in a particular case constitutes "some evidence" of insanity, like other evidentiary rulings, is a question of law for the court. Of necessity, it is based on the trial judge's evaluation of the facts before him.[2]

■ We hold only that a mere showing of narcotics addiction, without more, does not constitute "some evidence" of mental disease or "insanity" so as to raise the issue of criminal responsibility. This is not to say that evidence that an accused is an addict is without probative value along with other evidence on the issue of responsibility but only that alone it is not sufficient to require giving the Durham-McDonald instruction. Cf. Hightower v. United States, 117 U.S.App.D.C. 43, 325 F.2d 616 (1963). Some mentally ill persons are addicts and some addicts are mentally ill; the two conditions can coincide but we give no more credence to the notion that all addicts are mentally ill than to the converse that all mentally ill persons are addicts. To so hold would make every addict's case an "insanity" case.[3]

---

1. Appellant also contends that the evidence necessitated an instruction on entrapment. On the circumstances in this case, we cannot conclude that failure to so instruct was reversible error. See Berry v. United States, 116 U.S.App.D.C. 375, 324 F.2d 407 (1963), cert. denied, 376 U.S. 959, 84 S.Ct. 972, 11 L.Ed.2d 977 (1964).

2. The dissent argues that under *McDonald* only the jurors, not psychiatrists or judges, should pass on criminal responsibility. This oversimplification of the issue overlooks the historic proposition that jurors are not permitted to *speculate* their way to a verdict; a verdict must rest on *evidence* and it is the responsibility of the trial judge to decide, first, whether there is sufficient evidence on the issue for submission to the jury. Here there is no evidence either of mental disease or of actual impairment of capacity to control behavior.

3. Reference in the dissent to our ambiguous if not misleading statement in Brown v. United States, 118 U.S.App.D.C. 76, 331 F.2d 822, 823 (1964), requires that the quotation from *Brown* and the reli-

We have gone to great effort in our *McDonald* holding to restore the issue of criminal responsibility as one of fact for the jury and to make it clear that the expert's label is relatively unimportant but that his description and explanation of capacity to control behavior are critical. We have frequently urged that trial counsel and their expert witnesses should seek to avoid being content with mere expert conclusions and should emphasize the reasons, the factors, the symptoms, and the medical reasoning which led to the conclusions so that from the experts the jury will have a psychological profile of the accused and not simply a collection of psychiatric labels and technical jargon. See, e. g., Carter v. United States, 102 U.S.App.D.C. 227, at 236–237, 252 F.2d 608, at 617–618; Blocker v. United

States, *concurring opinion* 110 U.S.App. D.C. 41, at 51–52, 288 F.2d 853, at 863–864.

■■ The narrow question presented is whether there was sufficient evidence to require the *Durham-McDonald* instruction. Three experts were called as witnesses in this case. Two testified categorically that appellant was without any mental disease or defect and had no abnormal condition of the mind at the time of the alleged acts. All three psychiatrists testified that deprivation of heroin *could* to varying degrees impair a heroin addict's capacity to control his conduct.[4] The psychiatric testimony upon which appellant chiefly relies concerning capacity for control was premised on hypothetical facts not supported by evidence in this record,[5] *i. e.*, evidence of depriva-

ance on Robinson v. State of Cal., 370 U.S. 660, 667, 82 S.Ct. 1417, 8 L.Ed.2d 758 (1962), be scrutinized in context.

That portion of the *Brown* quotation from *Robinson* which states that narcotics addiction is a *mental* illness is not the language of the Supreme Court. Rather, that Court quoted from the brief of the appellee in *Robinson* by way of a footnote to its opinion, only to show that the appellee in *Robinson* conceded the state of addiction to be an illness. The footnote in *Robinson*, at page 667, 82 S. Ct. at page 1420, reads in pertinent part as follows:

"8 In its brief the appellee stated: 'Of course it is generally conceded that a narcotic addict, particularly one addicted to the use of heroin, is in a state of mental and physical illness. So is an alcoholic.' "

Compare Castle v. United States, 1964, 120 U.S.App.D.C. ——, 347 F.2d 492 (concurring opinion). The quotation from the per curiam opinion in *Castle, supra*, relied on by the dissent, was unnecessary to our affirmance of the conviction. Obiter dicta cannot be escalated into a holding by reciting it in one case and repeating it in another.

Thus the Supreme Court's footnote in *Robinson*, which hardly rises to the level of obiter dictum, did not in any sense intimate a view that the Court considered narcotics addiction a *mental* illness in the criminal-responsibility context. Its holding was merely that the addiction *status* may not be punished as a crime. If we are to speculate about what that

Court meant by quoting from appellee's brief in *Robinson*, it would be well to note that the full quotation equated narcotic addiction with alcohol addiction.

4. Dr. Dobbs, the expert whose testimony was the most favorable to appellant's claim, testified as follows:

"Q. Doctor, in this condition [addiction described by appellant as use of three or four shots per day and up to eight or nine] would his behavior controls be substantially impaired?

"A. As a result of the heroin or of the active process of the addiction in which case he might need a fix, to use the slang term, yes, they would be.

"Q. And would his mental or emotional processes be substantially affected?

"A. For the same reasons, yes.

"Q. And would you consider this condition to be an abnormal condition of the mind?

[Objections intervened.]

"THE COURT: I will let her answer. Was it abnormal in the sense it is a mental disease or mental defect?

"THE WITNESS: Abnormal in that it is not normal. Abnormal in the sense it is a mental disease in and of itself, no, it is not, Your Honor."

Record, p. 93.

5. More often than not expert opinions are based upon assumed facts embraced in hypothetical questions but a hypothetical *answer* based on facts which are not shown to exist is not evidence. Here the expert said in effect that *if* appellant had

tion of heroin at the time of the offense. Had there been evidence that, at the time of the alleged unlawful acts appellant "need[ed] a fix," as one expert put it, and that narcotics were then unavailable to him, the hypothetical conditions postulated would find support in the record. But the record contains no suggestion that at the time of the alleged criminal acts appellant did in fact "need a fix"; to the contrary undisputed affirmative evidence shows that at that very time he possessed large quantities of heroin available for sale. No rational thesis can demonstrate that an addict "in need of a fix" would be in a state of deprivation at the precise time he had an abundant supply of heroin in his possession.[6] In short, the most favorable interpretation of the medical testimony is that with no heroin available and the need urgent, appellant's behavior controls *might* have been affected; but the evidence on this record negates those interdependent factors.

The conclusion is inescapable, therefore, that with no claim or showing of need for and deprivation of narcotics —the hypothesis on which the most favorable medical testimony was premised—there was no evidence that appellant's capacity to control his behavior was impaired. There being an absence of the requisite evidence that at the time of the act charged appellant had an abnormal condition of the mind which substantially impaired his behavior controls, the *McDonald* standard for submission of the criminal responsibility issue was not met, and the judgment therefore is

Affirmed.[7]

J. SKELLY WRIGHT, Circuit Judge (dissenting):

As the court's opinion indicates, the trial judge was specifically requested to allow the jury to decide the issue of criminal responsibility in this case. Instead, the trial judge decided this issue against the defendant. In my opinion, this ac-

---

been deprived of needed narcotics at the time of the offense then his conduct might have been compulsive. But the record is barren of evidence of the very condition upon which the hypothesis was dependent. *Cf.* Hightower v. United States, 117 U.S.App.D.C. 43, 325 F.2d 616 (1963).

6. The dissent asserts that "addiction, with adequate exposition of cause and effect, is 'some evidence' of mental illness." With this proposition in the abstract we do not disagree; we note merely that the posited evidence of causality is not present in this record: the hypothetical testimony concerning breakdowns in behavior controls caused by separation of an addict from his drug is meaningless without evidence that *this appellant* was so deprived.

7. Since this opinion was filed the court voted to deny Appellant's petition for rehearing en banc; under our practice individual judges are free to file their comments on the court's opinion.

Judge Bazelon's statement seems to add up to the very conclusion reached by the division drawn to hear this case—namely that submission of an insanity issue to the jury could have resulted in nothing but impermissible speculation. The majority of this court do not, however, share Judge Bazelon's view that trial counsel's performance was deficient.

It should be further noted that the journals and other literature cited in Judge Bazelon's statement were not cited to the court by the litigants and hence have not been subjected to the useful screening afforded by the adversary process. Whether they are fairly representative or reflect simply one point of view we do not know. Discussion of addiction as a mental illness in a broad social context or for treatment purposes is quite a different matter from labeling addiction "mental disease" in the context of determining criminal responsibility.

We can all agree generally that society is doing too little with drug addiction but the solution does not lie in excusing all addicts for their crimes, nor in straining the law to acquit all narcotics peddlers, nor in sending all addicts to overcrowded mental institutions. The judicial process is not adapted to accomplish even the most urgently needed social reforms. Such solutions must come from the Legislative and Executive Branches and we do a disservice to the whole structure by trying to use judicial power to these ends. The late Justice Frankfurter often reminded us that courts cannot find judicial remedies for every social, economic or political problem which afflicts Mankind.

tion, and the opinion of the majority here, are based on a misconception of the question of responsibility raised by a defense grounded in drug addiction.

The majority here holds that there is no evidence to support the suggestion that at the time of the offense charged appellant was either so under the influence of narcotics or under such compulsion to obtain narcotics that his ability to control his behavior was substantially impaired. But this is not the issue which appellant presents. Appellant argues that his drug addiction reflects an underlying mental illness which has been exacerbated by the long continued use of drugs. It was in speaking of this condition—this cause and this effect, not the momentary effects of narcotics or the need of them—that we said in Brown v. United States, 118 U.S.App.D.C. 76, 77, 331 F.2d 822, 823 (1964):

> " * * * '[N]arcotic addiction is an illness. * * * "Of course it is generally conceded that a narcotic addict, particularly one addicted to the use of heroin, is in a state of mental and physical illness." ' Robinson v. California, 370 U.S. 660, 667 and n. 8, 82 S.Ct. 1417, 1420, 8 L.Ed.

2d 758 (1962). 'They are diseased and proper subjects for such [medical] treatment * * *.' Linder v. United States, 268 U.S. 5, 18, 45 S.Ct. 446, 449, 69 L.Ed. 819 (1925). The defense of insanity based on drug addiction generally presents a jury issue as to criminal responsibility. Horton v. United States, 115 U.S.App.D.C. 184, 317 F.2d 595 (1963); Rivers v. United States, 117 U.S.App.D.C. 375, 330 F.2d 841 1964). The trier of fact must decide whether the defendant had a mental disability and, if so, whether his act was the product thereof. Hightower v. United States, 117 U.S. App.D.C. 43, 45–46, 325 F.2d 616, 618–619 (1963)."

It is true the Government psychiatrists in this case testified that in their opinion Heard, though addicted, was not suffering from a "mental disease or defect." But, in explaining the cause and effect of narcotics addiction[1] in general and in Heard's case in particular, each of them also testified that Heard's long addiction would *affect his mental and emotional processes as well as his behavior controls.* Thus each of them indicated that by our legal definition,[2] as distinguished

---

[1]. The Government's psychiatrists' explanation of the cause and effect of narcotics addiction accorded generally with the views of the authorities recited by this court in Castle v. United States, 120 U. S.App.D.C. ——, 347 F.2d 492 (No. 17,-894, decided November 19, 1964). There, at pp. 493, we stated these views as follows:

"Chronic narcotics addiction is characterized by 'an overpowering desire or need (compulsion) to continue taking the drug and to obtain it by any means.' WORLD HEALTH ORGANIZATION, TECHNICAL REPORT No. 21, p. 6 (1950). The addict's physical dependence is 'the development of an altered physiological state which is brought about by the repeated administration of the drug and which necessitates continued administration of the drug to prevent the appearance of the characteristic illness which is termed an abstinence syndrome. * * * [Physical dependence] forces the addict to seek his drugs by any and all means. The first concern of many addicts be-

comes obtaining and maintaining an adequate supply of drugs.' Counsel of Mental Health, American Medical Association, *Report on Narcotic Addiction*, 165 J.A. M.A. 1707, 1713 (1957). There is also a 'psychological dependence [which] is, of course, related to the effects opiates create within the central nervous system.' *Ibid.* See also KOLB, NARCOTIC ADDICTION 95 (1962). Thus the dependence has been described as 'the body's slavery to the continued use of opiates.' *Id.* at 4. For the addict with a strong habit, abrupt withdrawal is dangerous. Kolb and Himmelsback, *Clinical Studies of Drug Addiction*, 94 AM.J. OF PSYCH. 759, 781 (1938)."

[2]. In McDonald v. United States, 114 U.S. App.D.C. 120, 124, 312 F.2d 847, 851 (1962) *(en banc) (per curiam)*, we said:

" * * * Our purpose now is to make it very clear that *neither the court nor the jury is bound by ad hoc definitions or conclusions as to what experts state is a disease or defect.* [Emphasis added.] What psychiatrists may con-

from their medical opinion, Heard may be suffering from a mental disease. Under the circumstances, it is difficult for me to understand why this is not the "some evidence" required to take the mental issue to the jury. Davis v. United States, 160 U.S. 469, 486–487, 16 S.Ct. 353, 40 L.Ed. 499 (1895).

With respect to "some evidence," in McDonald v. United States, *supra* Note 2, we said:

"* * * The subject matter being what it is, there can be no sharp quantitative or qualitative definition of 'some evidence.' Certainly it means more than a scintilla, yet, of course, the amount need not be so substantial as to require, if uncontroverted, a directed verdict of acquittal. The judgment of the trial judge as to the sufficiency of the evidence is entitled to great weight on appeal, but, since the defendant's burden is merely to raise the issue, *any real doubt should be resolved in his favor."* 114 U.S.App.D.C. at 122, 312 F.2d at 849. (Footnotes omitted; emphasis added.)

In this connection, footnote 4 [3] in the *McDonald* opinion is also of interest, since it applies specifically to this case.

In *McDonald our purpose was, so far as the law would allow, to take the issue of mental illness out of the hands of judges and psychiatrists, and place it in the hands of the jury.* In view of the uncontroverted evidence that appellant was addicted to narcotics drugs, that is where it should have been placed in this case, irrespective of the lack of evidence that he acted under the immediate influence of, or need for, drugs.

I respectfully dissent.

Before BAZELON, Chief Judge, and FAHY, WASHINGTON, DANAHER, BURGER, WRIGHT, McGOWAN, TAMM and LEVENTHAL, Circuit Judges, in Chambers. (Senior Circuit Judge Bastian was a member of the court at the time the votes were taken and voted to deny appellant's petition for rehearing en banc.)

### ORDER

There not being a majority of the circuit judges of this circuit in favor of a rehearing of the above-entitled case by the court *en banc*, the petition for rehearing *en banc* is denied.

BAZELON, Chief Judge, and FAHY, WASHINGTON and WRIGHT, Circuit Judges, being of the view that the issue should have the consideration of the full court would grant rehearing *en banc* and reserve the right to file statements of views.

TAMM, Circuit Judge, did not participate in the foregoing order, because he was not a member of the Court at the time the petition was filed or when the vote was taken.

---

sider a 'mental disease or defect' for clinical purposes, where their concern is treatment, may or may not be the same as mental disease or defect for the jury's purpose in determining criminal responsibility. Consequently, for that purpose the jury should be told that a mental disease or defect includes any abnormal condition of the mind which substantially affects mental or emotional processes and substantially impairs behavior controls. * * *"

3. Footnote 4 in *McDonald* reads:
"In considering the quantum of evidence necessary to raise the issue of criminal responsibility, we cannot ignore our experience that in most cases the accused does not possess the knowledge and financial ability required to seek and obtain expert testimony in his behalf. Ordinarily such persons can only obtain examinations by psychiatrists employed in government institutions, and if these examinations are inadequate, 'the [resulting] inadequacy of the evidence is not a point in favor of the prosecution.' Williams v. United States, 102 U.S.App.D.C. 51, 55–56, 250 F.2d 19, 23–24." 114 U.S. App.D.C. at 122 n. 4, 321 F.2d at 849 n. 4.

LEVENTHAL, Circuit Judge, did not participate in the consideration or disposition of the foregoing order.

---

STATEMENT OF CHIEF JUDGE BAZELON WHY HE BELIEVES THE PETITION FOR REHEARING EN BANC SHOULD BE GRANTED

BAZELON, Chief Judge (statement on denial of rehearing *en banc*):

I vote for rehearing *en banc*. I agree with Judge Wright that some evidence of mental illness was adduced, so that the insanity charge was required.

The court's opinion, as amended,[1] recognizes that evidence of addiction is probative on the issue of insanity. Indeed, the general medical consensus is that an established addiction process is a significant symptom[2] of mental disease.[3] But the court rejects this symptom, apparently because not all addicts are mentally ill. It is as if the court feared that giving the instruction would be equivalent to telling the jury that addiction is a mental illness. Of course, there is no such equivalency. Indeed, this court has unanimously stated that the amount of evidence requiring an insanity charge "need not be so substantial as to require, if uncontroverted, a directed verdict of acquittal."[4] The fact that not all addicts are mentally ill is no reason to prevent the jury from considering whether the addiction of the accused in a particular case reflects mental illness.

It is well established that

[I]n criminal cases the defendant is entitled to have presented instructions relating to a theory of defense for which there is any foundation in the evidence, even though the evidence may be weak, insufficient, inconsistent, or of doubtful credibility."[5]

1. Compare p. 44 of the opinion, issued December 17, 1964.

2. That is, it points to a medically established, statistically significant likelihood that disease is present. Like any other symptom, it may be misleading in any given case. This possibility does not destroy the diagnostic and hence evidentiary significance, in an inquiry into mental condition, of a description of the subject as addicted.

3. See the American Psychiatric Association's DIAGNOSTIC AND STATISTICAL MANUAL, MENTAL DISORDERS 38–39 (1954); Noyes & Kolb, MODERN CLINICAL PSYCHIATRY 473–81 (1963); Council on Mental Health of the American Medical Ass'n, REPORT ON NARCOTIC ADDICTION 20–21 (1957): Brill, *Misapprehensions about Drug Addiction: Some Origins and Repercussions*, 4 COMPREHENSIVE PSYCHIATRY 150, 157–58 (1963) ("Experienced psychiatrists who deal with addicts uniformly agree that the addict who appears for treatment in public facilities is uniformly a seriously disturbed person * * *."); Kolb, DRUG ADDICTION 38 (1962); testimony of Drs. Hamman and Sprehn in Horton v. United States, 115 U.S.App. D.C. 184, 317 F.2d 595 (1963); testimony of Drs. Hamman and Dobbs in

Hightower v. United States, 117 U.S.App. D.C. 43, 325 F.2d 616 (1964).
Compare Robinson v. California, 370 U.S. 660, 667 and n. 8, 82 S.Ct. 1417, 8 L.Ed.2d 758 (1962); Horton v. United States, *supra;* Brown v. United States, 118 U.S.App.D.C. 76, 331 F.2d 822 (1964); Castle v. United States, (1964), 120 U.S.App.D.C. ——, 347 F.2d 492; Jackson v. United States, 118 U.S.App. D.C. 341, 343, 336 F.2d 579, 581 (1964) (separate op.); National Council on Crime and Delinquency, Advisory Council of Judges, REPORT (1964); Hightower v. United States, 117 U.S.App.D.C. 43, 325 F.2d 616 (1964) (all judges apparently agreed that had jury trial not been waived, submission to the jury of the issue would have been warranted); and "not guilty by reason of insanity" verdicts returned in United States v. Prince, D.D.C.Crim. No. 349–63 (March 17, 1963); United States v. Bell, D.D.C. Crim. No. 969–61 (May 22, 1962); United States v. Purcell, D.D.C.Crim. No. 487–62 (Jan. 14, 1963); United States v. Wallace Carroll, D.D.C.Crim. No. 383–62 (June 28, 1962).

4. McDonald v. United States, 114 U.S. App.D.C. 120, 122, 312 F.2d 847, 849 (1962).

5. Tatum v. United States, 88 U.S.App. D.C. 386, 391, 190 F.2d 612, 617 (1951);

We found that the insanity instruction was therefore required in a case where it was not requested, and the defendant's reliance on the insanity defense was not articulated by his counsel at trial.[6] Here, there was not only a request, but the entire defense went to the issue of responsibility. The failure to instruct, under the circumstances, was tantamount to an instruction to convict.

Although the insanity charge was not only required but requested, the defense was so poorly presented as to raise fundamental questions about the adequacy of the defense afforded indigent persons. Defense counsel called three psychiatrists. The total time consumed by their testimony, including qualification and cross-examination, cannot have exceeded twenty minutes. Other than reference to Heard's statement that he had been using drugs since the 1940's, there was a complete absence of testimony about his personal history. Other than conclusory statements to the effect that he was "without mental disease or defect," there was no testimony about his personality structure or mental condition. There was no explanation of the relationship of drug addiction to mental disease.[7] Indeed, there was no meaningful exploration even of Heard's addiction process. Had the jury been charged on the question of responsibility, it would not have known what was meant by the statement that Heard was addicted.[8] It would not have known what effect addiction has on mental processes, except in the situation of deprivation, conceded not to have been present.[9] It would not have known whether addiction is symptomatic of mental disease, what the nature of that disease might be, or how it would bear on the insanity defense. It could not have assessed the adequacy of the psychiatric examination,[10] or have understood why

---

*accord:* United States v. Indian Trailer Corp., 226 F.2d 595 (7th Cir. 1955); Perez v. United States, 297 F.2d 12 (5th Cir. 1961); Phillips v. United States, 311 F.2d 204 (10th Cir. 1962).

6. Tatum v. United States, note 5 *supra.*

7. See note 3 *supra.*

8. The term "addition" has a variety of connotations in the narcotics context, ranging from a simple habit of personal use to a chronic state of physiological as well as psychological need. Chein, *The Status of Sociological and Social Psychological Knowledge Concerning Narcotics,* in NARCOTIC DRUG ADDICTION PROBLEMS (Livingston, Ed., 1963) at 146, 148–49. Some contend that a person is not an addict until he experiences withdrawal symptoms, or accepts "addiction" as part of his personality structure. Lindesmith, OPIATE ADDICTION 67–112 (1957). A common definition is that of the World Health Organization:

"Drug addiction is a state of periodic or chronic intoxication detrimental to the individual and to society, produced by the repeated consumption of a drug (natural or synthetic). Its characteristics include: (1) an overpowering desire or need (compulsion) to continue taking the drug and to obtain it by any means; (2) a tendency to increase the dose; and (3) a psychic (psychologic) and sometimes a physical dependence on the effects of the drug (often called habituation)."

The uncontested claims of appellant are that he has been using drugs since the late 1940's; the psychiatrists testified at trial that he has been an addict since the mid-50's. The meaning of the distinction was not explored at trial, so it is not possible to know what meaning the experts attached to "addiction." The depth of a person's involvement with drugs would certainly be a relevant inquiry where evidence of "addiction" was proferred as bearing on the insanity defense.

9. Counsel did not even attempt to draw out the possibility that Heard may have been acting out of fear of future deprivation at the time and that therefore, although he seemed to have an ample supply of narcotics, his acts were not responsible.

10. See the authorities cited at note 3 in Judge Wright's amended dissent, and the successful motion for independent psychiatric examination in United States v. Coleman, D.D.C.Crim. Nos. 1229–63 and 83–64; compare Blunt v. United States, 100 U.S.App.D.C. 266, 275 and n. 23, 244 F.2d 355, 364 and n. 23 (1957).

psychiatrists who in other trials stressed the relationship between chronic addiction and disease [11] stated in this trial, in conclusory terms, that Heard had no mental disease or defect. This state of the record makes the court's holding a very limited one indeed.[12]

This is emphasized by a comparison with Horton v. United States.[13] There counsel, supported by a research grant, had spent hours in preparation of the defense. The defendant was examined by psychiatrists from public and private practice. They testified about both his addiction and the disordered personality of which they found it symptomatic. The relationship of addiction and disease was thoroughly explored, and the insanity instruction was given as a matter of course.

It might be unfair to blame appointed trial counsel in this and other cases for past inadequacies in the presentation of the insanity defense. We must bear in mind that counsel either volunteers or is drafted to serve without compensation and at great inconvenience and cost to himself. "[I]t is very often necessary to appoint lawyers who understandably know little about [criminal] practice, and even less about the special difficulties of presenting the insanity defense. The Bar has responded beyond the call of duty and good will." [14] More important, until relatively recent years it had not been made clear that the insanity defense requires behavioral information in depth, and that defense counsel, prosecutor and court have a duty to insure an adequate presentation for an indigent defendant.[15]   New understanding re-

quires abandonment of old practices. It is not necessarily criticism of those who acted in accordance with prior understandings to say that a great deal more than was offered in this case is now required to maintain the integrity of the adversary system.[16]

---

11. See the transcripts in Horton v. United States, and Hightower v. United States, note 3 *supra*.

12. For example, it does not alter our unanimous acceptance in Brown v. United States, 118 U.S.App.D.C. 76, 331 F.2d 822 (1964), of the established medical view of addiction, note 3 *supra*.

13. Note 3 *supra*.

14. Jackson v. United States, 118 U.S.App. D.C. 341, 347, 336 F.2d 579, 585 (1964) (separate op.).

15. Rollerson v. United States, 119 U.S.App. D.C. 400, 343 F.2d 269, decided Oct. 1, 1964; Jackson v. United States, note 14 *supra;* see Adams v. United States, 119 U.S.App.D.C. 152, 337 F.2d 548 (1964) (dissenting opinion).

16. For example, counsel may need to consult with psychiatrists in order effectively to develop and present the defense. Compare Whalem v. United States, 120 U.S.App.D.C. — at p. —, 346 F.2d 812, at p. 823, decided April 23, 1965, (dissenting opinion).