Walter D. CANNADY, Appellant,

v.

UNITED STATES of America,

Appellee.

No. 18392.

United States Court of Appeals District of Columbia Circuit.

Argued June 8, 1964.

Decided July 14, 1965.

See also D.C., 34 F.R.D. 211.

818

Mr. Daniel T. Donohoe, Washington, D. C., with whom Mr. M. S. Mazzuchi, Washington, D. C. (both appointed by this court), was on the brief, for appellant.

Mr. Daniel J. McTague, Asst. U. S. Atty., with whom Messrs. David C. Acheson, Frank Q. Nebeker and Joseph A. Lowther, Asst. U. S. Attys., were on the brief, for appellee.

Before WILBUR K. MILLER, Senior Circuit Judge, and FAHY and WASHINGTON, Circuit Judges.

WASHINGTON, Circuit Judge:

On October 14, 1963, appellant was tried and convicted of narcotics violations under six counts of an indictment filed January 28, 1963, charging him with offenses on July 31 and August 1, 1962. Appellant had not been arrested until December 15, 1962. Appellant contends that (a) he was denied substantial justice by virtue of the four and one-half months delay between the alleged offenses and his arrest; (b) the trial judge committed reversible error in denying appellant's pre-trial motion for a mental examination; and (c) he was denied substantial justice by virtue of the government's failure to call a corroborating witness, a special employee of the Federal Bureau of Narcotics whom appellant alleges was under appellee's control. Prior to trial the government had announced that it would call this witness. On the day of the trial, when the government advised the court and the defense counsel that the witness was not present, the court declared that no continuance would be granted.

I.

It must be recognized that the delay between an alleged offense and the arrest of an accused, when he is first informed of the accusations, may so blur his memory that were he innocent he might be unable to recall the facts which would comprise his alibi or other defense. It is also to be recognized that the risk of an erroneous conviction under these circumstances is compounded when the government's case consists solely of the uncorroborated testimony of a narcotics agent. See Ross v. United States, 121 U.S.App.D.C. ——, 349 F.2d 210 (1965). Cf. Franklin v. United States, 117 U.S.App.D.C. 331, 330 F.2d 205 (1964), and Kelly v. United States, 90 U.S.App.D.C. 125, 127–130, 194 F.2d 150, 152–155 (1952). However, as the record below now stands, it appears that the defendant took the stand and testified, in considerable detail, about the circumstances surrounding the alleged offense. It appears that the defense of this case was not prejudiced by the delay, cf. Ross v. United States, *supra*. Judge Miller and I do not accept appellant's contentions in this regard.

## II.

Turning now to appellant's contentions regarding the denial of his pre-trial motion for a mental examination: Under Section 24–301(a) of the D.C. Code, "the court may order the accused committed" for examination whenever "it shall appear to the court from the court's own observations, or from prima facie evidence submitted to the court, that the accused is of unsound mind or is mentally incompetent [to stand trial]." In Mitchell v. United States, 114 U.S.App.D.C. 353, 316 F.2d 354 (1963), we held that an accused's uncontroverted allegations of facts suggestive of mental illness must be accepted as true for the purpose of a pre-trial motion for a mental examination. We said:

"The requirement of prima facie evidence must be read in the light of the limited purposes of the requested examination. A chief purpose is to get evidence on whether the accused is or is not competent to stand trial. Another purpose is to get evidence on whether, if there is a trial, the jury should be instructed on insanity and criminal responsibility. It cannot reasonably be supposed that Congress intended to require the accused to produce, in order to get a mental examination, enough evidence to prove that he is incompetent or irresponsible. That is what the examination itself may, or may not, produce." 114 U.S.App.D.C. at 359, 316 F.2d at 360. (Footnotes omitted).

On April 1, 1963, appellant's court-appointed counsel made a motion for a mental examination. In his affidavit he alleged that

"Your affiant has serious doubts as to defendant's mental capacity to assist counsel intelligently in the trial and defense of this case; and your affiant has serious doubts as to the mental health of the defendant at the time the crime with which he is charged is alleged to have been committed by him and believes the crime may have been the result of a diseased or distorted mind."

Counsel based his belief on his own unspecified personal observations and on the following statements and representations of the defendant: that the defendant's grandfather and two cousins were afflicted with mental disturbances; that defendant has refused to use his real name—Walter Canty—because he has a complex about his past and about that name; that shortly after the death of defendant's father, he developed a hatred of his mother; that defendant told people he was born and raised in Richmond (rather than his true birthplace) because he wanted to be accepted and liked; that at age 39, defendant is a frequent and prolonged daydreamer and engages in fantasies of personal grandeur; that he began taking drugs in order to be accepted by others; that he has taken drugs in recent years because they make him "not care about the situation he is in" and make "any situation bearable"; that he has a history of nervous and shaking hands; and that his only explanation for his past crimes is that they were committed out of his "great frustration about life."

As in *Mitchell,* we think an examination was here required "to establish the nature, extent and effects of the defendant's alleged affliction." *Id.* at 359, n. 15, 316 F.2d at 360, n. 15. In light of the offenses with which the defendant was charged, we think the averments made raised a sufficient possibility that the crimes charged were the product of a mental disease or defect to have required the trial judge to grant the pre-trial motion for a mental examination. Not only is an assertion of physiological drug addiction clearly implicit from both the affidavit and appellant's previous narcotics convictions [1] but the affidavit explicitly relates both etiological and symptomatic factors that might be indicative

---

1. Indeed, had the court earlier made the inquiry it did at trial, it would have been told by appellant that he had been taking four capsules a day for the past nine months.

of a severe neurosis or psychosis which could have produced the narcotics offenses in this case. A medical examination might have revealed (a) that the offenses were the product of drug addiction, and that such addiction was in this case a mental disease or defect,[2] (b) that the offenses were the product of drug addiction which in this case was, in turn, the product of a mental disease or defect, or (c) that the offenses were a direct product of a mental disease or defect, which may or may not have also produced drug addiction.

We have recently held that failure of the trial judge to grant a pre-trial examination on averments of narcotics addiction was reversible error, emphasizing that "the defendant has the right to assistance of the court in developing the basis for his insanity defense."[3]

■■ Since appellant was not afforded a fair opportunity to develop a defense of insanity, we see no merit to appellee's assertion that because appellant's new counsel subsequently waived the defense of insanity he is now precluded from raising the error of the District Court in denying the pre-trial motion for a mental examination. Having been denied the opportunity to establish the basis of an insanity defense, the defendant cannot now seriously be charged with asquiescing in that denial because of his failure to assert that defense. Before the defendant may be re-tried he is entitled to an adequate mental examination on the issues of his competency to stand trial and his mental capacity to commit the offenses charged.[4]

For these reasons, Judge Fahy and this writer consider that the judgment and conviction must be reversed and the case remanded.[5] It is

So ordered.

FAHY, Circuit Judge, is of the opinion that the indictment should be dismissed because in his view appellant has been denied his constitutional right to a

2. See, generally, Brown v. United States, 118 U.S.App.D.C. 76, 331 F.2d 822 (1964), and cases cited therein. Cf. Heard v. U. S., 121 U.S.App.D.C. ——, 348 F.2d 43 (1964); and statement of Judge Bazelon, dissenting from denial of rehearing en banc, 121 U.S.App. D.C. ——, 348 F.2d 49 (1965).

3. Brown v. United States, supra at 77, 331 F.2d at 823.

4. Subsequent to the trial, and seven months after appellant's pre-trial motion, the trial judge ordered the Legal Psychiatric Service to examine appellant and render a pre-sentencing report. Following the examination, which was conducted in the cellblock, the psychiatrist reported to the court that in his opinion appellant was competent at the time of the examination and was presumably competent at the time of the trial, about two weeks prior to the examination. The psychiatrist informed the court, however, that he was unable to reach any conclusion on the appellant's mental condition on the dates of the alleged offenses and that he did not have adequate facilities, or the time, to do an examination, in depth, of the appellant. We think that at least both the time and the facilities normally made available for pre-trial mental examinations should now be made available to appellant.

Since a *nunc pro tunc* hearing has already proved a failure in this case, we do not consider such a "remedy" to be adequate. In any event we think that a reversal of the conviction and a prospective hearing are required by Dusky v. United States, 362 U.S. 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960); see Wider v. United States, 121 U.S.App.D.C. ——, 348 F.2d 358 (1965).

5. We find little to substantiate appellant's contention that the government had "control" of its special employee or that it directly prevented appellant from obtaining or enforcing a subpoena for that person prior to the commencement of the trial. However, the government's failure to inform the defendant of the witness' unavailability, until the day of the trial, combined with the trial court's announcement that no continuance would be granted, may have prejudiced the accused, had he hoped to benefit from the witness' testimony. In view of our disposition of this case, and given the unlikelihood that the question will arise at a new trial, we do not reach this contention.

speedy trial, but since a majority of the court are not of that view and since he agrees with Part II of Judge Washington's opinion he joins in reversal and remand for the reasons there set forth. And see Ross v. United States, 121 U.S. App.D.C. ——, 349 F.2d 210 (June 30, 1965).

WILBUR K. MILLER, Senior Circuit Judge (concurring in part and dissenting in part).

I concur in the result reached by Judge Washington in Part I of this opinion. I dissent from Part II.