THE PEOPLE OF PUERTO RICO, Plaintiff and Appellee, *v.* JOSÉ SOTO ZARAGOZA ET AL., Defendants and Appellants.

No. CR-65-96.    Decided April 24, 1967.

*Rafael L. Ydrach Yordán* and *Gerardo Méndez Correa* for appellants. *J. B. Fernández Badillo, Solicitor General,* and *Peter Ortiz, Assistant Solicitor General,* for The People.

MR. JUSTICE BLANCO LUGO delivered the opinion of the Court.

In *People* v. *Ayala Ruiz,* 93 P.R.R. 686 (1966), we expressed concern regarding the manner in which the inves-

tigations, in which undercover agents intervened, were implemented by the police, and gave warning as to the necessity of improving the method of investigation to prevent the people from losing faith in justice and deriving the impression that the prosecution of certain persons who are linked with crime by reputation is sanctioned.[1]

■ We reaffirm now that there is a need for undercover police activity for the investigation of certain crimes, like the bolita, traffic in drugs, and the clandestine *bancas*. In the federal sphere, as recently as December 12, 1966, a similar view was enunciated in *Lewis* v. *United States*, 385 U.S. 206, but as it is properly stated therein "the particular circumstances of each case govern the admissibility of evidence obtained by stratagem or deception." This is precisely the area we seek to explore in our pronouncements in *People* v. *Ayala Ruiz, supra,* and in the present opinion, being conscious that it is not possible to fix a rule of thumb to cover all the situations.

■ The experience in the District of Columbia helps us to place the problem in the appropriate perspective. The concern of the federal courts coincides with ours in the consideration of two basic factors which frequently occur in the prosecution of these crimes, which are all characterized by their distinctive clandestinity: the delay in prosecuting the offenders and the sole testimony of the undercover agent.

---

[1] Reports given to publicity by the State Police tend to corroborate the existence of the practice to blacklist certain persons. In the edition of June 8, 1966 of the daily newspaper *El Mundo*, at p. 11, reference is made to the fact that "According to a survey made by the Police, there are in Puerto Rico, at the present time, 5,664 persons involved in the Bolita game and their operations cover 68 of the 76 towns in the Island. The survey, carried out as part of a general inventory of crime in the country, reveals that at least 350 of the 5,664 persons involved in the game are bankers and the remaining 5,314 are dealers who receive remuneration for their operations."

See also the edition of April 5, 1967 of the newspaper *"El Día"*, at p. 16.

In *Ross* v. *United States*, 349 F.2d 210 (1965), the first expression on this particular, it is emphasized that the delay in commencing the proceeding—seven months—may be so onerous and oppressive that actually it may constitute a denial of the due process of law. Express reference is made to "The recurring spectacle of convictions based solely upon the testimony of a police witness, who, by reason of lapse of time, could not testify on the basis of unaided personal recollections . . . ." See also, *Bey* v. *United States*, 350 F.2d 467 (1965); *Cannady* v. *United States*, 351 F.2d 817 (1965); *Jackson* v. *United States*, 351 F.2d 821 (1965); *Powell* v. *United States*, 352 F.2d 705 (1965); *Worthy* v. *United States*, 352 F.2d 718 (1965); *Roy* v. *United States*, 356 F.2d 785 (1965); *Daniels* v. *United States*, 357 F.2d 587 (1966); and *Morrison* v. *United States*, 365 F.2d 521 (1966). Although it is true that defendant must show that he was prejudiced by the delay in filing the information, since this is the responsibility of the Government and it is arranged solely for its advantage, the accused should not be forced to labor under an exacting burden of proof. As stated in *Jackson, supra* often the difficulty encountered in establishing the elements of that prejudice is the best evidence of its existence. Since alibi is the usual defense presented it should not be forgotten that the majority of the offenders belong to a subcultural stratum characterized by the monotony of their daily existence and that this very absence of important events in their lives prevents them from distinguishing one day from another.

■ To correct these situations of manifest inequality the United States Court of Appeals in the District of Columbia invoked its inherent power to supervise the judicial proceedings. It is that same power of supervision which we now exercise. *In cases of this nature the judicial role cannot be limited to determining the sufficiency of the evidence and the credibility of the witnesses.* Aware of a situation of evident

disadvantage for the accused we would be guilty of fetichism, if we would limit ourselves to closing our eyes to reality applying, with electronic precision, the doctrine of nonintervention in the weighing of the evidence. Our responsibility in a system of order and impartiality in the judicial proceedings is not fully accomplished by shifting the problem to legislative ambit; it demands that in the consideration of the appeals brought before us we require evidence to supplement the sole testimony of the undercover agent with something more than the minimum particulars necessary to establish the violation.[2] We affirm that the particular circumstances of each case should govern not only the admission of evidence obtained by stratagem or deception, as stated by the Federal Supreme Court in *Lewis* v. *United States, supra*, but also the effect of such evidence. It is not necessary, either, to vary the rule adopted in *People* v. *Seda*, 82 P.R.R. 695 (1961), for we had long since foreseen the inherent risks of a merely mechanical application thereof.

In the present case we confront once more a conviction of José Soto Zaragoza for a violation of the Bolita Act.[3]

---

[2] The actions of the trial courts undoubtedly respond to the attitude previously assumed by this Court in affirming judgments of violations of the Bolita Act with the sole testimony of the undercover agent, generally a "slim and bare" testimony as we characterized it in *People* v. *Ayala Ruiz, supra*. In 1964 and 1965 of 39 appeals in bolita cases, we affirmed 35 and reversed the judgment in four occasions, two because of insufficiency of the evidence, one because of an illegal search, and one because we considered that there was entrapment. In 1966, prior to the decision in *People* v. *Ayala Ruiz, supra*, we affirmed the judgments in the fourteen appeals considered.

[3] In *People* v. *Soto*, 71 P.R.R. 776 (1950), the sentence imposed could not prevail because the evidence introduced against defendant was the result of an illegal search performed by the police. Two years later, in *People* v. *Soto*, 73 P.R.R. 52 (1952), we affirmed an order of the trial court which had set aside a judgment of conviction on the ground that it was obtained by means of fraud committed by police officers.

On September 2, 1964[4] the prosecuting attorney filed an information against Soto Zaragoza and Carlos Palacio Amador charging them with having, four months earlier, and on May 6, acting in accord and by mutual agreement, had in their possession and control material related to the illegal game of bolita. The arraignment took place on September 21, granting them a term to enter their plea, which they did by brief of November 6, informing that their defense was alibi. Upon defendant's request the prosecuting attorney advised that he did not have any documentary evidence.

At the trial the only documentary evidence introduced consisted of the testimony of the undercover agent, Ramón Calderón, who testified that he had been stationed in Villa Palmeras area since about two and a half months before, to procure evidence of violations of the Bolita Act; and that in order to facilitate his work, he pretended to be a mechanic in the Sanjurjo brothers' garage, situated four houses beyond the residence of codefendant Palacio; that on Wednesday, May 6, about 6:00 p.m. he was in front of Palacio's residence and noticed that Soto arrived in a Buick and stopped in front of the house; that he was about two or three feet away from the automobile, beside the fence of the house; that Palacio came out of his house and boarded the automobile and sat by the side of Soto, at the right-front side, and talked to him for about five minutes, and then Soto took a package he had on the seat and delivered it to Palacio; that when Palacio opened the package he (the agent) noticed that it contained 3 digit figures with a space to the right and other figures; that then Palacio alighted from the car and entered his house; that after a few minutes Soto also entered the house where he remained for about fifteen minutes; that he cannot remember the figures.

---

[4] The sworn statement presented for the purpose of the determination of probable cause is dated August 24, three months 18 days subsequent to the occurrence of the facts charged.

On cross-examination he testified that subsequent to May 6, the date on which the facts occurred, he stopped working as undercover agent in Villa Palmeras area; that he was stationed away from San Juan, but he cannot remember the town; that that day it was dusky at 6:00 p.m.; to the question of whether his commission was to keep watch over Soto and Palacio exclusively, he answered affirmatively, and over other offenders too, but he admitted that as a result of his work only the latter, and no other person, was prosecuted; that the package was made up in wrapping paper, but he cannot remember the size; he admits that the sworn statement offered for the purpose of determining probable cause does not state that Palacio boarded Soto's automobile; that Palacio passed in front of him when he went to Soto's car; that he did not stoop to watch the delivery of the package; that the automobile did not have the interior light on; that there was no electric pole nearby, but there was light on the porch of the house; that Soto parked a "little" past the gate of the house.

Alberto Sanjurjo, witness for the defense, testified that he was the owner of the tinsmith and painting shop situated at 203 Merhoff Street in Villa Palmeras, to which agent Calderón alluded; that he knows the latter and that he never worked in his shop.

A slip for the Registration of Cockfights of the Public Recreation and Parks Administration corresponding to the fights held on May 6 in Gallera San Andrés was also introduced in evidence. Armando Santos, a professional cock breeder, who takes care of Soto's cocks, testified that on said date fights were held in Gallera San Andrés, situated in Ward Caonillas in Carolina; that Wednesday is one of the cockfighting days during the season; that he brought three of Soto's cocks; that he arrived at the cockpit at 9:00 a.m. accompanied by Soto, and they remained there until

about 8:00 p.m., when both returned in Soto's automobile; that Soto remained in the cockpit; that the fights are registered in the name of the cock breeder. From the registration slip it appears that Armando matched three fights, Nos. 9, 12 and 18. The bartender of the cockpit testified that Soto was in the cockpit that day from about 9:00 a.m. to 7:30 p.m., that he can remember the time he left there, because he went to him to pay the pending tickets.

■ It is proper to state previously that the time elapsed between the alleged commission of the offense and the presentation of the information—about four months—is not unreasonable and oppressive. Nor did it prejudice the appellants in the preparation of their defense of alibi.

■ Even more, a calm and objective examination of the evidence, causes great dissatisfaction in our conscience as to whether the defendants' guilt has been established in the competent manner alluded to at the outset of this opinion. From the agent's testimony it is inferred that he was expressly posted there to investigate Soto and Palacio. His version of the facts—the observation of the delivery of a package when it was dusky, inside of an automobile with no light on, and his perceiving, at a distance, a list of figures —although it establishes the minimum particulars of the offense charged, does not meet in itself, the requirements of the rule of exacting burden of proof to which we have previously alluded. We must add to this that he was contradicted as to the justification offered for his presence in that area—his work as a mechanic—and that Sanjurjo's testimony was not impeached, and that the defense of alibi substantiated by parol and oral evidence had been timely notified to the prosecuting attorney, and although the prosecuting attorney had knowledge of the defense sought to be established, and of the evidence on which they intended to base

said defense[5] he did not present evidence of rebuttal either, or contradict it in any manner whatsoever. The convictions cannot prevail.[6]

The judgments rendered by the Superior Court, San Juan Part, on February 8, 1965 will be reversed.

Mr. Chief Justice Negrón Fernández, as well as Mr. Justice Belaval, concurs with Mr. Justice Santana Becerra in his dissenting opinion in this case.

—O—

MR. JUSTICE SANTANA BECERRA, with whom MR. CHIEF JUS-
TICE NEGRÓN FERNÁNDEZ and MR. JUSTICE BELAVAL con-
cur, dissenting.

San Juan, Puerto Rico, April 24, 1967

On September 2, 1965 appellants José Soto Zaragoza and Carlos Palacio Amador were charged in a single information, with having, on May 6, 1964, had in their possession and control material related to the illegal game of bolita. They were tried and found guilty on February 8, 1965 and each one was sentenced to serve one year and a half in jail.

A careful examination of the record convinces me that there is sufficient and competent evidence at law to support these convictions, at least, as long as *People* v. *Seda*, 82 P.R.R. 695 (1961), is the case law of this Court.

---

[5] The hearing was held on February 8, 1965, the defense of alibi was filed on November 16, 1964. Prior to the trial, December 23, 1964, the prosecuting attorney was notified of a motion for the summons of the person in charge of the record division of the Parks Administration with the records of the cockfights held May 6 at Gallera San Andrés.

[6] Although it has not been specifically assigned as error we noticed that the information filed does not allege that the material in appellants' possession relating to the bolita game could be used in said illegal game or is connected with the practice of said game. See *People* v. *Trinidad Fernández*, 93 P.R.R. 877 (1967); *People* v. *Mantilla*, 71 P.R.R. 35 (1950); *People* v. *De Jesús*, 70 P.R.R. 36 (1949).

The evidence for the prosecution is not *unreal* or intrinsically incredible. What this undercover agent said he saw, according to his sworn statement, he could see at a distance of two feet. This evidence was not contradicted. On the contrary, his testimony that the place was in front of Palacio's house at No. 210 of Merhoff Street was corroborated by a witness for the defense.

Likewise it is not an unreal and intrinsically incredible fact that he saw the lists at a distance of two feet although there was no light in the automobile. The facts occurred at 6:00 p.m. more or less. He took judicial notice that on May 6, 1964 the sun set in San Juan at 6:47 p.m. It was on the horizon for three quarters of an hour longer and evidently it was in the daytime, artificial light not being necessary in order to see.

The evidence, which is not unreal or incredible by itself, is sufficient to convict, under the continuous line of affirming judgments based on *Seda*, if the same was believed by the trial judge, as he actually did, after settling the conflicts therein.[1] Although the function of giving or not giving credit to a particular oral testimony is a prerogative of the trier, an examination of the record and of the evidence for the defense—an alibi—does not convince me that the trial judge exercised such prerogative in such an unnatural and merely capricious manner. The documentary evidence admitted in nowise proves that at the time the crime was committed

---

[1] The agent said he was wearing mechanic's dungarees and *pretended* to be a mechanic who was "helping a young man who owns a mechanics shop on that street." On cross-examination he said he worked three weeks as a mechanic in a shop which he said belonged to the Sanjurjo brothers. The witness for the defense, Alberto Sanjurjo, testified that he had a tinsmith and painting shop at 203 Merhoff Street; that he had met the agent when he was a policeman, before he was a policeman and that he had painted a car for him. He stated that the agent did not work for him in said shop as an employee or without pay. He had been defendant Palacio's neighbor for fifteen years. The judge settled the conflict of credibility on a collateral fact brought for the purpose of attacking the credibility of the agent.

appellant Soto Zaragoza was in a cockpit, nor that he had been there all that day. On the contrary it establishes that the cocks supposedly owned by the appellant and which were matched were registered and matched as belonging to another person, one of the witnesses for the defense, as the latter himself testified.

Defendant Palacio did not even bring that evidence of alibi, or any other to contradict the evidence for the prosecution.

The majority points out "that the defense of alibi substantiated by parol and oral evidence had been timely notified to the prosecuting attorney, and although the prosecuting attorney had knowledge of the defense sought to be established, and of the evidence on which they intended to base said defense he did not present evidence of rebuttal either, or contradict it in any manner whatsoever." In a footnote it is stated that the defense notified the prosecuting attorney, on December 23, 1964, of a motion for the summons of the person in charge of the record division of the Parks Administration with the records of the cockfights held on May 6 in Gallera San Andrés.

Aside from the fact that defendant Soto Zaragoza's evidence of alibi is not of such conclusive nature in itself to require evidence of rebuttal not to be believed, as it was not by the trial judge, let us see the record.

The information was filed on September 2, 1964. Defendant was arraigned on September 21. On November 6 defendants filed a motion stating:

"That in compliance with Rule No. 74 of the Rules of Criminal Procedure of Puerto Rico defendants inform this court as well as the prosecuting attorney, that their defense will be alibi."

Defendants do not offer any information as to alibi therein.

At a hearing held November 16, 1964, the prosecuting

attorney insisted that the defense produce information as to said alibi, where the defendants were on that day, what they were doing, what witnesses they had to prove those facts, and all the circumstances therein. The defense firmly refused to give the information and the court sustained it and denied the motion of the prosecuting attorney. So, the prosecuting attorney cannot be blamed for having failed to prepare his rebuttal for said evidence nor can contrary inferences to his case be derived therefrom.

On the other hand, the testimony of the two witnesses to support the defense of alibi was hazy and vague as to those questions which the prosecuting attorney asked for the purpose of provoking an opportunity for summoning witnesses for rebuttal. The motion to summon witnesses with reports related to the cockfights of May 6 gave no information. As a question of reality the document produced by said summons gives no information either. It is a slip of paper without a signature, where neither the name of Soto Zaragoza nor that of Palacio appear, nor does it contain any information to show the presence of the latter on that day at the cockpit mentioned therein.

In this case appellants are acquitted through the Court of Second Instance assuming the role reserved to the lower court to pass on the credibility of the evidence and settle the conflict therein, such prerogative of the trier as exercised by him being annulled herein.

For the legal reasons and the juridical rule which I set forth in my dissenting opinion in the case of *People* v. *Bermúdez Pérez, post*, p. 345, and which I take as reproduced, I dissent also in this case.

I accept that there may be situations in which the evidence for the prosecution is so inherently incredible or is so vitiated with unreality that it should not be ground for conviction. This case does not present such a situation.

It causes deep concern that the time may come when appellants in general, in view of the precedent established in this case, *People* v. *Ayala Ruiz*, 93 P.R.R. 686 (1966), and others recently decided under similar circumstances, although without expressing the grounds, might claim the right, in the exercise of a function now assumed in second instance to pass on the credibility and settle the conflicts of the oral evidence, that the court annul that function as has been exercised by a jury, which is but another trier of the facts, unless it is intended to establish a separate rule for the bolita cases.

I accept that the Court is not irrevocably bound by rules previously established. If a rule is to be substituted or modified it should be replaced by another rule in order that the trial judges may have a clear principle of law to apply. They are not the ones who, in the exercise of their normal function of weighing and believing or not believing the evidence, have placed defendants in bolita cases in a "situation of evident disadvantage." They were placed in that position, if they are, by the sufficiency of evidence at law to convict rule, which this Court established in the *Seda* case. Until then the trial judges did not convict on the sole testimony of the agent, without more. On the contrary, the absence of any other evidence has been constantly justified or sanctioned in an unalterable line of decisions for several years, which followed *Seda*, and until recently, on the ground that the undercover agent system requires it to be so.

I do not sanction the existence of a state of law in which the citizen accused is in an acknowledged situation of evident disadvantage in the proceeding in which his innocence is involved. But obviously the trial judges must now encounter a rather perplexing situation in their role of judging, faced with an evidence which is reportedly sufficient and competent at law on the one hand, and on the other hand, with criteria

of weighing and credibility in the subjective process of judging, which are no longer theirs, but those of the justices of this Court. I do not believe this is the proper solution.

Whatever the prevailing opinions as to whether the persecution of the bolita game contemplates a social purpose or not, and whether other means to confront the problem of this game or the manner to persecute it, should be devised or produced, it is up to the Legislative Power to determine it. In the meantime the public policy which the Judicial Power must enforce up to the present is that contained in Act No. 220 of 1948.[2]

---

[2] The information in this case charges a crime. Section 4 of Act No. 220 of 1948 punishes the *possession* of material connected with the bolita game. If it is charged that the material is connected with the illegal game, it is logically susceptible to be used in the same. Rules 38 and 64(p) of the Rules of Criminal Procedure afford defendant, under § 4 of Act No. 220, a mechanism to defend himself of the possession of innocent material by requiring the prosecuting attorney to present a bill of particulars. If the bill of particulars does not reveal prohibited material, the information is dismissed under Rule 64(p).